[Crim. No. 30512. Second Dist., Div. One. Feb. 8, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
JOE LEWIS, Defendant and Appellant.

## COUNSEL

Paul Halvonik, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, Jonathan B. Steiner, Kathleen Dougherty and Nancy Ann Stoner, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and Roger W. Boren, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**LILLIE, Acting P. J.**—The court found defendant guilty of four separate counts of pimping (Pen. Code, § 266h). He appeals from the judgment.

In 1971 Susan, 17 years old, was picked up by defendant and taken to his apartment (210) at 960 South Oxford; thereafter she lived with defendant who was working as a "minister" and "door to door preacher." A month later defendant asked Susan to help him with the rent; he took her to Torchy's bar and, after talking to a man, told Susan to take him to their apartment and have sexual intercourse with him for $20; she did so, and from that time on continuously until February 1976, she worked as a prostitute for defendant giving him all of her earnings. Defendant instructed her how to be a prostitute giving her a "price list type thing," drove her to locations where she solicited customers, stood by while she picked up customers, showed her how to choose customers, arranged for her to take them to his apartment (210), paid the rent on this and other apartments to which she took customers, installed

telephone service for solicitation, obtained identification for her in the name of his ex-wife because Susan was a minor and, for over a five-year period took from her all of her earnings as a prostitute. If Susan tried to hold out any money, defendant would give her a beating. Soon defendant quit his job as a "minister" and devoted all of his time to cards, pool, gambling and directing Susan's prostitution business. Susan kept a book of customer's names, phone numbers and other information, and continued to work steady seeing at least 15 to 20 customers a week; her business improved and her prices increased; twice she was arrested for prostitution and defendant bailed her out. During 1973 and 1974 Susan worked out of apartment 210 and turned all the money she received over to defendant; during 1974 she made approximately $28,000; two of her customers were James Henry and George Oshiro.

COUNT I charged defendant with pimping on August 1, 1974. This count refers to a cancelled check (exh. 2) dated August 1, 1974, made out to $50 cash given by James Henry to Susan for an act of prostitution which check Susan turned over to defendant who endorsed it as "Paul Joseph." COUNT II charged defendant with pimping on July 31, 1975. This count refers to a cancelled check (exh. 3) made out to $50 cash given to Susan by George Oshiro for an act of prostitution which check she turned over to defendant; it bears the endorsement, "Paul Joseph." COUNT III charged defendant with pimping on October 26, 1975. This charge refers to a cancelled check (exh. 4) dated October 26, 1975, made out to $75 cash and given to Susan by Oshiro for an act of prostitution which check she turned over to defendant; it bears the endorsement, "Joe Lewis." Susan identified the endorsed signatures on the foregoing checks to be those of defendant. Between 1971 and 1976 defendant worked for six months as a Yellow Cab driver and as a bartender; during this time he held two separate driver's licenses in the names of "Paul Joseph" and "Joe Lewis" respectively.

In January 1975 defendant sent Susan to Fairbanks to engage in prostitution with men working on the Alaska pipeline; she made $2,000, $1,000 of which she sent to defendant, and personally gave him the remaining $1,000. During 1975 Susan made $32,000 in earnings as a prostitute, all of which she gave to defendant. One Evitz, a customer, bought Susan a 1975 Corvette and rented an apartment on South St. Andrews where they lived until November 1975; for her sexual services in 1975 Evitz paid her $20,000, all of which she gave in cash to defendant; defendant continued to maintain apartment 210, and an extension of the phone located there was placed in Susan's apartment on

South St. Andrews; when a customer called for an appointment she told him to meet her at apartment 310 which defendant had rented for that purpose. In August 1975 defendant forced Susan to give him the pink slip to the Corvette; she continued to work as a prostitute for defendant, and after Evitz moved out, she moved with defendant into an apartment building on South Manhattan Place in November 1975; she continued to give him all of her earnings from prostitution.

COUNT IV charged defendant with pimping between January 7 and January 14, 1976. The evidence establishes that in January 1976 defendant sent Susan to Chicago to work a convention; between January 7 and January 14, she earned $1,200 as a prostitute and sent it all by Western Union to defendant.

On February 6, 1976, Susan left defendant and later turned over to police her identification, three years of day-to-day financial records and her "trick book." Her financial records disclose that during the five years she worked for defendant she had turned over to him all of her earnings from prostitution amounting to $150,000.

Defendant testified that he cashed checks Susan received from Oshiro and Henry because he had a bank account and she did not; he worked as a reverend, then as a bartender and finally for Yellow Cab. Basically he denied knowing Susan engaged in prostitution and denied she gave him any checks or money from prostitution or went to Alaska, he received any proceeds from any business in Alaska or any money from Susan in Chicago, they lived together in apartment 210 or that Susan ever "turned any tricks" there or that he ever struck her.

There is merit to appellant's contention that his conviction on all four counts charging separate acts of pimping cannot stand because only one continuous course of conduct is involved. At no time on the trial level did defendant raise this issue; however, the court at the close of the People's case in a gratuitous statement[1] to counsel recognized the

---

[1]"THE COURT: Let me interrupt you, counsel, just to clarify a problem that your remark raises in my mind: [¶] I would assume that the offense of pimping is a continuing offense; that is, an offense that occurs over a period of time. Ordinarily one doesn't live for an instant, one lives over a period of time. [¶] I take it the things we have had thus far, that is a portion of the pleading here that's been proof offered. There is not any proof of by any keeper or manager or inmate of a house or other place where prostitution is practiced or allowed, in the unusual sense of that word. I guess you could argue maintenance of apartment. Basically it is soliciting and deriving support and maintenance. . . . But I was assuming, assuming that your evidence related to the language that

problem, as did the prosecutor,[2] but it appears that both felt it could be solved at the time of sentence. Thus the court found defendant guilty on each count[3] and at the time for imposition of judgment and sentence suspended the proceedings and granted defendant five years probation[4] on certain terms and conditions.

Each of the four counts alleged in the language of the statute a violation of section 266h, Penal Code, and involved the same prostitute; they differ only as to date, but they fall within the period between 1972 and 1976. The pertinent portion of section 266h reads: "Any person who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of such person's prostitution . . . is guilty of pimping, a felony . . . ." The

you cited, and I am suggesting to counsel, forgetting for a moment what the evidence is in the fact, speaking of generalities, that that is a continuous offense. It is not an offense that occurs in an instant, like stealing a glove off a counter in a department store. It takes place over a period of time. One could be guilty of pimping during the months of July and August 1973, with a particular named prostitute and thereafter discontinue the relationship and resume it in the months of September, October and November of '75. Therefore perhaps they would have committed two separate offenses. [¶] The event in September, October, November of 1975 would all be a single offense. I couldn't pick each day and charge you with ninety separate counts of pimping that might prove actively on ninety days. But in the end, I'd be faced, as a prosecutor, with the responsibility of all I would have proven would be a single offense. I think. [¶] The testimony of Susan Taylor I think is not susceptible of drawing any inference other than a single offense of pimping, although it goes over a long period of time. I did not hear testimony from her indicating any significant break. It's true she went into Alaska for a month, she went to Chicago for a few days, she took a trip to—with her father to northern California and so forth. But the evidence that she has offered, I guess she's the central witness in the case sounds to me is evidence all in one offense. I assume that. I am simply looking at you. [¶] Where you say it is an offense named in the first count, that may have been the theory of the pleader. I have a feeling that basically we are talking about a single offense here."

2"MR. LOEWEN [Prosecutor]: I think it appears to be a continuing offense from the evidence we have so far. Of course, the Court may change its opinion in further testimony. The People intend to rest after the evidence is received or not received by the Court. [¶] I basically agree with the Court. However, because of the way our criminal justice system is run, and we have to plead offenses, pimping within the statute of the limitation—[the court stated it was not raising that issue] . . . I think the Court could find the Defendant guilty of some count, depending, guilty of all four counts or not guilty of all four counts. I think it is really a matter of sentencing, possibly 654 P.C. might prevent the Court to be consecutive on it."

3The court stated: "I make the finding, recognizing that in all probability the most that really can be sustained, the finding of guilty in Count I on the evidence in this case, each of the Counts speaks the truth. The Court will be unable to impose a sentence on more than one count."

4It is unclear from the reporter's transcript to which count the court intended this to apply; likewise silent on this matter is the body of the minute order reflecting the foregoing.

statutory language points up two considerations—the section contemplates an ongoing continuous course of living or deriving support and maintenance from the earnings of a prostitute or proceeds of prostitution; and the gravamen of the offense of pimping is that course of conduct by one knowing the person supplying the earnings to be a prostitute. The record here establishes but one continuous criminal act committed by defendant between 1971 and 1976; however, this one violation was divided into four counts subjecting defendant to multiple convictions for the single offense of pimping.

Although involving different factual situations, the concept that a defendant may not be subjected to multiple convictions for only one criminal act is articulated in *People* v. *Lyons,* 50 Cal.2d 245, 275 [324 P.2d 556] (possession of several articles stolen from separate victims, single offense); *People* v. *Smith,* 26 Cal.2d 854, 858-859 [161 P.2d 941] (simultaneous receipt of three articles of stolen goods, single offense); *People* v. *Bowie,* 72 Cal.App.3d 143, 156 [140 Cal.Rptr. 49] (11 counts of possession of blank and unfinished checks, single offense); *People* v. *Aresen,* 91 Cal.App.2d 26, 37 [204 P.2d 389] (two counts of illegal sale of the same stock, single offense) and *People* v. *Puppilo,* .100 Cal.App. 559, 562 [280 P. 545] (unlawful possession of two pistols, one offense). *People* v. *Neder,* 16 Cal.App.3d 846 [94 Cal.Rptr. 364] relied on by the Attorney General, is distinguishable because it was a prosecution under the forgery statute (§ 470, Pen. Code); it was held that three separate forgeries on three separate sales slips charged on another's credit card constituted separate offenses. Defendant therein relied on the doctrine developed in theft cases whereby several takings may constitute one offense, but because of the language of section 470, the court refused to extend this to forgery. Said the court: "The essential act in all types of theft is taking. If a certain amount of money or property has been taken pursuant to one plan, it is most reasonable to consider the whole plan rather than to differentiate each component part. [Citation.] The real essence of the crime of forgery, however, is not concerned with the end, i.e., what is obtained or taken by the forgery; it has to do with the means, i.e., the act of signing the name of another with intent to defraud and without authority, or of falsely making a document, or of uttering the document with intent to defraud. Theft pursuant to a plan can be viewed as a large total taking accomplished by smaller takings. It is difficult to apply an analogous concept to forgery. The designation of a series of forgeries as one forgery would be a confusing fiction." (Fn. omitted.) (Pp. 852-853.)

Reasonable interpretation of the statutory definition leads to but one conclusion—that the legislative intent was that living or deriving support or maintenance from the earnings of a prostitute or proceeds of her prostitution knowing her to be a prostitute is an ongoing continuing offense that occurs over a period of time. The evidence supports a whole uninterrupted relationship between Susan and defendant over a period of five years during which she daily turned her entire earnings over to him, and in our view the judge as the trier of fact was correct in his conclusion that "The testimony of Susan Taylor I think is not susceptible of drawing any inference other than a single offense of pimping; although it goes over a long period of time. I did not hear testimony from her indicating any significant break." The statute and the record before us compel the rejection of the *Neder* rationale. It is no answer to suggest, as does the Attorney General, that defendant's extensive culpability justified multiple counts and multiple convictions. The sordid details of Susan's existence with defendant, his introduction of her to a life of prostitution, his willingness to live off of her earnings from the sale of her body to others and his greed for money over a five-year period create no surge of sympathy for defendant. However, the seriousness of the crime and defendant's culpability can be and should be appropriately dealt with by the trial court at the time of sentence.

Nor does the solution to the problem lie in the manner of sentencing utilized by the trial court to avoid the proscription of double punishment (§ 654, Pen. Code) because it cannot alter the fact that defendant suffered multiple convictions for the one underlying offense. The detriment to defendant is obvious. In *People* v. *Jaramillo,* 16 Cal.3d 752 [129 Cal.Rptr. 306, 548 P.2d 706], defendant was charged with and convicted of stealing and receiving the same property. The court refused to permit the convictions to stand. Said the court: "In what appears to have been an attempt to avoid the proscription against double punishment, defendant was sentenced on the receiving conviction as the greater of the two offenses of which he was convicted, with the sentence on the taking conviction temporarily stayed, the stay to become permanent upon the successful completion of the term of the sentence for the receiving conviction. This treatment overlooks, however, the basic problem of whether defendant may properly be *convicted* of both charges, it being a fundamental principle that one may not be convicted of stealing and of receiving the same property. [Citations.]" (Original italics; fn. omitted.) (P. 757.)

■ The proceedings were suspended and defendant was placed on probation for a period of five years' on certain terms and conditions, among them that he spend the first year in the county jail, maintain employment of not less than 40 hours a week to be approved by the probation officer, and "defendant is not to work in bars, taxi cabs or other locations suitable for acting as a pimp." Appellant's claim that this prohibition amounts to an infringement of his constitutional right to work, does not serve the statutory ends of probation, fails to meet the *Dominguez* standard and is constitutionally vague, is without merit.

■ "When granting probation, courts have broad discretion to impose restrictive conditions to foster rehabilitation and to protect public safety." (*In re Bushman,* 1 Cal.3d 767, 776 [83 Cal.Rptr. 375, 463 P.2d 727].) A condition to the granting of probation which compels a defendant to give up a fundamental or constitutional right is not in and of itself unconstitutional or invalid (*People* v. *Mason,* 5 Cal.3d 759, 764 [97 Cal.Rptr. 302, 488 P.2d 630] [condition requiring probationer to submit to warrantless search by probation officer at any time, upheld]; *People* v. *Keefer,* 35 Cal.App.3d 156, 168 [110 Cal.Rptr. 597] [condition that defendant not engage in furnace and heating business directly or indirectly, upheld]), but such condition even though prohibiting conduct which is not only legal but protected by the Constitution, cannot stand if it is not related to the crime of which defendant has been convicted and if it has no reasonable relation to future criminality (*People* v. *Arvanites,* 17 Cal.App.3d 1052, 1063 [95 Cal.Rptr. 493] [First Amendment rights]). The standard used in this connection is that set up in *People* v. *Dominguez,* 256 Cal.App.2d 623, 627 [64 Cal.Rptr. 290] and quoted in *In re Bushman,* 1 Cal.3d 767, 776-777 [83 Cal.Rptr. 375, 463 P.2d 727] and *People* v. *Keefer,* 35 Cal.App.3d 156, 168 [110 Cal.Rptr. 597]. "A condition of probation which (1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality does not serve the statutory ends of probation and is invalid." (*People* v. *Dominguez, supra,* 256 Cal.App.2d 623, 627.) ■ The evidence[5] supports a relationship of

[5]The evidence establishes that early in 1971 defendant initiated Susan to a life of prostitution by taking her to Torchy's bar and choosing her first customer; in 1972 Susan solicited customers in "Aldo's" in Hollywood to which defendant drove her in his car and stayed nearby to warn her of possible police officers; at one time defendant ordered Susan to go to The Hole at Fourth and Main, where he was waiting with three young girl runaways, and talk them into working as prostitutes for him which she did; during defendant's pimping activities he worked for a short time as a Yellow Cab driver and

the condition of probation to the crime of pimping, and a reasonable relationship of the forbidden activity of working in bars or driving a cab to future criminality. It cannot be denied that bars and taxi cabs are ideal locations for conducting pimping activities. Such businesses cater to the public particularly to customers who are not personally known and who are looking for sexual contacts. They offer endless opportunities for employees so inclined to engage in the nefarious activities of the sort involved herein and for one with defendant's pimping background to slip back into his previous way of life.

The full condition is that "defendant is not to work in bars, taxi cabs or other locations suitable for acting as a pimp." The context in which the phrase "other locations suitable for acting as a pimp" appears prevents it from being unconstitutionally vague. The more definite preceding terms—"bars" and "taxi cabs"—suggest the type of employment locations which would be unsuitable. Clearly they are those where the public gathers, where transients likely are present, where customers are not personally known and where they may be looking for sexual services. Moreover, another condition of probation requires that defendant maintain employment to be approved by the probation officer.

The minute order of February 18, 1977, embodying defendant's "probation and sentence" is modified by eliminating under "CHARGE" after "266.H" the following, "04 CTS," and substituting therefor "01 CT"; and by adding directly under "PROBATION AND SENTENCE" the following: "The defendant was found guilty of one count of pimping in violation of section 266h, Penal Code, committed in Los Angeles County between August 1, 1974 and January 15, 1976."

As modified the judgment (order granting probation) is affirmed.

Thompson, J., and Hanson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 6, 1978.

---

had two driver's licenses, in the name of "Paul Joseph" and "Joe Lewis" respectively; for awhile he worked as a bartender at Arthur J's restaurant at Wilshire and St. Andrews at a time (1975) when Susan was living on St. Andrews working as a prostitute for him; for two days he worked as a bartender at Torchy's.