[No. A056572. First Dist., Div. Three. Apr. 9, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
HECTOR ADOLFO AVINA, Defendant and Appellant.

**COUNSEL**

James B. Laflin, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Clifford K. Thompson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WERDEGAR, J.**—Hector Adolfo Avina appeals his conviction on one count of continuous sexual abuse of a child (Pen. Code, § 288.5).[1] He contends he was deprived of his right to a unanimous jury verdict by an instruction, derived from language in the statute, allowing conviction without jury unanimity on which individual acts of abuse occurred. We find ourselves in agreement with the only previous decision on this point, *People v. Higgins* (1992) 9 Cal.App.4th 294 [11 Cal.Rptr.2d 694], that section 288.5 does not unconstitutionally deprive a defendant of a unanimous jury verdict. We affirm.

FACTS

Defendant was charged with a single count of continuous abuse occurring during 1990. The victim, Yesenia A., turned 10 years old in July 1990. She lived with her mother, father and three siblings in a mobile home. From

---

[1]All further statutory references are to the Penal Code.

April 1989 until October 1, 1990, defendant lived with the family, first sleeping in the mobile home, then later in a cabin on the property.

On the night of September 30, 1990, Yesenia's mother was in bed when she heard the sound of a door and got up to investigate. She saw defendant walking around the corner outside. Yesenia, who had been asleep earlier, was now awake. When questioned, Yesenia admitted defendant had been in the children's bedroom. The mother became suspicious and asked if she could look at Yesenia's private parts; the mother noted stickiness between Yesenia's legs and a streak of blood on her vagina. Later that night, Yesenia told her mother defendant had put his private parts on her private parts and that this had happened before. Defendant left the next day.

Yesenia also testified in detail to the above incident; she stated it was the last time she saw defendant; she placed the incident in October 1990. She was sleeping in her bedroom with her younger brother. Defendant woke her up, pulled her pajamas up and her underwear down, pulled her legs off the bed, and "put his privates in my private." He moved up and down, hurting Yesenia a little. When he stopped, he readjusted her clothes and put her back in bed. He did not say anything.

According to Yesenia, defendant had done the same thing to her many times before. She said he had done it more than five times and had done it twice each week. Most of the incidents occurred in her bedroom, but sometimes he molested her in the cabin where he was living; most of the molestations were at night, but some occurred after school when Yesenia's mother was not home. Defendant always did the same thing he did the last time. Defendant told her not to tell her parents because they would not like her anymore and would hit her. Except for the last incident, Yesenia did not testify to any specific incident of molestation.

Yesenia could not remember the first time she was molested. She testified she was nine years old when the molestation started, which would place the start between July 1989 and July 1990. Her testimony was inconsistent, however, when she was asked whether she had been molested during the third grade (the 1989-1990 school year).[2]

A prosecution expert testified to the results of a medical examination of Yesenia. She found only "remnants" of Yesenia's hymen, indicating it had

---

[2]Defendant incorrectly states Yesenia testified to the specifics of the first molestation "in either late September or early October of 1989, at the beginning of her 4th grade schoolyear." Yesenia started *third* grade in the autumn of 1989. She could not remember the specifics of the first molestation, but testified at one point that it happened at the beginning of fourth grade. Later, she testified she was molested during third grade as well, and her earlier testimony was the result of confusion.

been worn away through repeated penetrating injury, consistent with penetration by a penis and inconsistent with an isolated accident. The injury resulted from "a chronic situation; in other words, it happened a lot of times."

Defendant denied ever having touched, fondled or had intercourse with Yesenia. He testified he was in Mexico from late October 1989 to March 1990. His wife corroborated this testimony, but Yesenia's mother testified defendant did not travel to Mexico during the period (Apr. 1989-Oct. 1, 1990) he stayed at her house. Defendant also testified that while he lived with Yesenia's family, he worked during the afternoon, arriving home after Yesenia's father.

In argument to the jury, the prosecutor did not attempt to pick out three specific instances of molestation. He argued there was a series of molestations, "as many as 20 or 30," occurring between January 1, 1990, and defendant's departure on October 1, 1990. The defense attorney argued it was implausible defendant would have molested Yesenia in her bedroom where her brother and sometimes her grandmother were also sleeping; Yesenia, he argued, would have cried out in pain and awakened them. He also argued Yesenia testified only to molestation while she was in the fourth grade (which she entered in the fall of 1990) and, hence, not to a period of three months or more as required by the statute.

## DISCUSSION

■ Section 288.5 was enacted in 1989 in order to remedy some of the problems of pleading, proof and jury instruction that had arisen in the prosecution of "resident child molesters" under section 288. (See *People* v. *Jones* (1990) 51 Cal.3d 294, 328-330 [270 Cal.Rptr. 611, 792 P.2d 643] (dis. opn. of Mosk, J.); *People* v. *Superior Court* (*Caudle*) (1990) 221 Cal.App.3d 1190, 1195 [270 Cal.Rptr. 751].) It provides a severe penalty (6, 12 or 16 years in prison) for anyone who, while residing with or having recurring access to a child under the age of 14, engages, over 3 months or longer, in 3 or more acts of substantial sexual conduct, as defined in section 1203.066, subdivision (b), or lewd acts under section 288. (§ 288.5, subd. (a).) Only one count of section 288.5 may be charged for each victim, and no other felony sex offense may be charged involving the same victim and occurring within the charged time period. (§ 288.5, subd. (c).)

Subdivision (b) of section 288.5 provides: "To convict under this section the trier of fact, if a jury, need unanimously agree only that the requisite number of acts occurred not on which acts constitute the requisite number."

The jury in this case was so instructed. ▆ Defendant contends subdivision (b), and the instruction taken from it, are deprivations of his right to a unanimous jury verdict under article I, section 16 of the California Constitution.

▆ When the evidence tends to show a larger number of distinct violations of the charged crime than have been charged and the prosecution has not elected a specific criminal act or event upon which it will rely for each allegation, the court must instruct the jury on the need for unanimous agreement on the distinct criminal act or event supporting each charge. (*People* v. *Davis* (1992) 8 Cal.App.4th 28, 41 [10 Cal.Rptr.2d 381]; *People* v. *Salvato* (1991) 234 Cal.App.3d 872, 879 [285 Cal.Rptr. 837]; *People* v. *Moore* (1986) 185 Cal.App.3d 1005, 1014 [230 Cal.Rptr. 237].)

"Neither instruction nor election are required, however, if the case falls within the continuous course of conduct exception. This exception arises in two contexts. The first is when the acts are so closely connected that they form part of one and the same transaction, and thus one offense. [Citation.] The second is when . . . the statute contemplates a continuous course of conduct of a series of acts over a period of time. [Citation.]

"This second category of the continuous course of conduct exception has been applied to a limited number of varying crimes, including pimping (*People* v. *Lewis* (1978) 77 Cal.App.3d 455, 461 [ ]), pandering (*People* v. *White* (1979) 89 Cal.App.3d 143, 151 [ ]), failure to provide for a minor child (*People* v. *Morrison* (1921) 54 Cal.App. 469, 471 [ ]), contributing to the delinquency of a minor (*People* v. *Lowell* (1946) 77 Cal.App.2d 341, 345-347 [ ]) and child abuse (*People* v. *Ewing* [1977] 72 Cal.App.3d [714,] 717)." (*People* v. *Thompson* (1984) 160 Cal.App.3d 220, 224 [206 Cal.Rptr. 516].)

To this exemplary list could be added spousal battery (*People* v. *Thompson, supra,* 160 Cal.App.3d at pp. 225-226), annoying or molesting a child (*People* v. *Moore, supra,* 185 Cal.App.3d at p. 1015), acting as accessory to a felony (*People* v. *Gunn* (1987) 197 Cal.App.3d 408, 415 [242 Cal.Rptr. 834]) and dissuading a witness from testifying (*People* v. *Salvato, supra,* 234 Cal.App.3d at p. 883).

▆ The evidence here did not show an especially close temporal connection between the individual molestations in this case; thus, we are concerned with only the second aspect of the continuous-course-of-conduct exception, i.e., when " 'the statute defining the crime may be interpreted as applying . . . to an offense which may be continuous in nature . . . .' " (*People* v. *Moore, supra,* 185 Cal.App.3d at pp. 1014-1015.) The question

presented is whether the Legislature in section 288.5 has validly defined the offense prohibited as a continuous course of conduct.

Past decisions on the continuous-course-of-conduct exception "have focused on the statutory language in an attempt to determine whether the Legislature intended to punish individual acts or entire wrongful courses of conduct." (*People* v. *Salvato, supra,* 234 Cal.App.3d at p. 882; see, e.g., *id.* at p. 883 [dissuasion of witness is course-of-conduct crime because statutory language focuses on goal or effect, while "terrorist threats" statute focuses on individual act and hence does not come within exception]; *People* v. *Lewis* (1978) 77 Cal.App.3d 455, 460-461 [143 Cal.Rptr. 587, 3 A.L.R.4th 1185] [language of pimping statute—"lives or derives support or maintenance" from the earnings of a prostitute—shows Legislature contemplated continuous course]; *People* v. *Gunn, supra,* 197 Cal.App.3d at p. 415 [same for language of accessory statute].)

Interpretation of section 288.5, however, does not require any such inferences. Subdivision (b) of the statute states expressly that it is to be treated as a continuous-course-of-conduct crime for purposes of the unanimity rule; that is, that unanimity is not required on any particular acts of molestation. Obviously the Legislature *intended* to create a course-of-conduct offense. Defendant must be taken to contend either that the Legislature nevertheless *failed* in its attempt to define a criminal course of conduct or that, in defining the crime, the Legislature exceeded some *limit* set by the constitutional right to jury unanimity.

Defendant argues section 288.5, because it requires proof of three or more acts of molestation, does not define a course of criminal conduct, but rather a "*composite* crime, consisting of multiple single act crimes." (Italics in original.) It is true that section 288.5 requires that the defendant have committed three or more acts of sexual abuse against the child, any one of which would be criminal in itself.[3] This is not dispositive. Several statutes held to define course-of-conduct crimes may also be violated by a single act; these include child abuse (§ 273a), spousal battery (§ 273.5) and dissuasion of a witness (§ 136.1). That section 288.5 can, in theory, be violated by committing only three individual acts does not remove it from the course-of-conduct category.

More to the point, section 288.5 defines the offense more narrowly than as a series of three molestations. The statute requires residence with or recurring access to the child victim, as well as sexual abuse over a period of three

---

[3]Although substantial sexual conduct, as defined in section 1203.066, subdivision (b), is not an independent offense, we assume for purposes of this discussion that any of the acts listed there, when committed with a child, would be punishable under some provision of the Penal Code.

months or more. It is aimed not at the stranger who happens to encounter the same victim three times, but at the molester, often a relative, family friend or lodger, who subjects a child to an extended course of repetitious abuse. The three-act requirement merely sets a "baseline" for measuring the course of conduct, while "[t]he continuous-access requirement makes clear that the statute was targeted at the resident child abuse situation, where problems with generic testimony are most likely to arise, and was not to be used against individuals who have only transient contact with the alleged victim." (See *People* v. *Jones, supra,* 51 Cal.3d at pp. 329-330 (dis. opn. of Mosk, J.).)

Sexual abuse by an abuser with continual access is in many ways similar to other course-of-conduct crimes against the person. While each act of abuse may be criminal, the harm done to the victim is cumulative and may be exacerbated not only by frequent repetition, but by the very circumstances of residential intimacy that make the course of conduct possible. Like other course-of-conduct crimes, section 288.5 focuses on "a *series* of acts occurring over a substantial period of time, generally on the same victim and generally resulting in cumulative injury." (See *People* v. *Jones, supra,* 51 Cal.3d at p. 329 (dis. opn. of Mosk, J.), italics in original.) As with nonsexual child abuse and spousal battery, the victims "are likely to be unwilling to report their abuse to the authorities due to fear of physical and/or emotional retaliation" by the abuser. (*People* v. *Thompson, supra,* 160 Cal.App.3d at p. 226.)

Section 288.5 displays a final characteristic of the course-of-conduct crime, one of substantial benefit to a defendant. ▋ When a criminal statute punishes a course of conduct, the prosecution may not divide that course up into multiple counts of the offense; the entire continuous course constitutes only a single violation of the statute. (*People* v. *Lewis, supra,* 77 Cal.App.3d at pp. 459-462 [pimping].) The Legislature expressly incorporated this attribute of the course-of-conduct crime in section 288.5, subdivision (c): ". . . A defendant may be charged with only one count under this section unless more than one victim is involved in which case a separate count may be charged for each victim."

▋ Defendant proposes no constitutional reason why it should be beyond the Legislature's prerogative to define a continuous-course-of-conduct crime as it has done in section 288.5. The United States Supreme Court recently faced a related question of jury uniformity: the extent to which a legislature may define a single offense as including two or more modes of commission, thereby eliminating the need for jury uniformity as between those modes or theories of guilt. (*Schad* v. *Arizona* (1991) 501 U.S. ___ [115

L.Ed.2d 555, 111 S.Ct. 2491].)[4] Recognizing the Constitution may impose some limit on the generality with which offenses are defined, Justice Souter wrote for a plurality: "[O]ur sense of appropriate specificity is a distillate of the concept of due process with its demands for fundamental fairness, [citation], and for the rationality that is an essential component of that fairness." (*Id.* at p. __ [115 L.Ed.2d at p. 569].)

■ The Legislature's definition of continuous sexual abuse of a child as a course-of-conduct crime is both fair and rational. The "generic" nature of the victim's testimony in many prosecutions of resident child molesters under section 288 presents a potential of unfairness for both parties. If generic testimony is deemed sufficient to prove specifically charged instances of molestation, a defendant may be exposed to a potentially very large number of counts of violating section 288, limited only by the discretion of the prosecutor. (See *People* v. *Jones, supra,* 51 Cal.3d at p. 314; see, e.g., *People* v. *Superior Court* (*Caudle*), *supra,* 221 Cal.App.3d at pp. 1193-1194 [defendant charged with 144 counts of violating § 288, subd. (a), based on victim's testimony of a daily "routine" of molestation during 9-month period].) On the other hand, if differentiating evidence were required for each count under section 288, the People would be severely inhibited in prosecuting many egregious abusers, those who repeatedly victimize the youngest children. (*People* v. *Luna* (1988) 204 Cal.App.3d 726, 738 [250 Cal.Rptr. 878], disapproved on other grounds in *People* v. *Jones, supra,* 51 Cal.3d at p. 322.)

Section 288.5 achieves a rational, fair reconciliation of these conflicting considerations. The statute is written so as to apply only to the particular class of offenders that has given rise to these problems, abusers with residential or recurring access to the child. It allows prosecutors to seek significant penalties against the resident molester, without demanding unrealistic precision from the child witness. At the same time, it limits the offender's potential liability to a single count against a given victim, thus eliminating the potential for arbitrary variation in charging and punishment present under section 288. ■ The Legislature did not deprive defendants of due process by defining, in section 288.5, a course of criminal conduct.

---

[4]The Attorney General argues at some length that the "alternative theories" rule—that jurors need not agree unanimously on the theory of guilt—applies here. However, no such alternative modes of commission or bases for liability are defined in section 288.5, and none were presented to this jury. We therefore express no opinion on the scope of the "alternative theories" rule in California, a question that has generated some dispute. (See *People* v. *Davis, supra,* 8 Cal.App.4th at pp. 40-45; *People* v. *Melendez* (1990) 224 Cal.App.3d 1420, 1432-1433 [274 Cal.Rptr. 599].)

█ Defendant argues a unanimity instruction should nonetheless have been given here because the "mixed specific testimony and generic testimony" would have allowed the jurors to disagree about which acts were committed. While the jurors might have disagreed about particular acts, there was no room here for disagreement about what criminal *course of conduct*, if any, defendant engaged in. In a prosecution for a course-of-conduct offense, where the evidence shows only a single course of conduct, the jury need not be instructed on a need for unanimity as to the conduct supporting the conviction. (*People* v. *Vargas* (1988) 204 Cal.App.3d 1455, 1464-1467 [251 Cal.Rptr. 904] [child abuse].)

Defendant also argues the lack of a unanimity instruction deprived him of the opportunity to defend by means of alibi or lack of opportunity. In fact, however, defendant did present an alibi for part of the period covered by the charge, from January to March of 1990. His testimony, moreover, as to lack of opportunity (that he was not alone in the house with Yesenia in the afternoons), if believed, could have swayed jurors to disbelieve the victim's testimony in toto. Far from eliminating alibi or lack of opportunity as a defense, section 288.5 actually makes a showing of opportunity part of the People's case, as one of the elements of the crime is cohabitation with or recurring access to the victim.

Presenting an alibi to a course of conduct alleged to have occurred over three months or more may be difficult; the difficulty, however, is inherent in the very conduct the Legislature has legitimately sought to punish. Such a difficulty in presenting a particular defense, resulting from the nature of the crime or the evidence, is not a deprivation of due process. (*People* v. *Jones*, *supra*, 51 Cal.3d at pp. 319-320.)

█ Finally, defendant contends the court should have instructed, sua sponte, on section 288 as a lesser included offense of section 288.5. The evidence, he asserts, would have justified a jury finding that he had not engaged in the course of abuse prohibited by section 288.5, but had committed one or two lewd acts within the meaning of section 288.

Section 288 requires the specific intent of "arousing, appealing to, or gratifying the lust or passions or sexual desires of [the defendant] or of the child . . . ." A conviction for section 288.5, in contrast, could be based upon a course of substantial sexual conduct within the meaning of section 1203.066, subdivision (b), which requires no specific intent. As the Attorney General points out, such acts could be engaged in for nonsexual purposes, for example for the infliction of pain, or to appeal to the sexual interest of a third person. Because section 288.5 could be violated without necessarily

also violating section 288, the latter is not necessarily included within the former and no sua sponte instruction was required.

### DISPOSITION

The judgment of the superior court is affirmed.

White, P. J., and Chin, J., concurred.