Filed 4/20/16  P. v. Ramirez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALBERTO RAMIREZ, JR.,<br><br>    Defendant and Appellant. | D068560<br><br><br><br>(Super. Ct. No. SCD260678) |

APPEAL from a judgment of the Superior Court of San Diego County, Eugenia Eyherabide, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Alberto Ramirez, Jr., guilty of one count of pimping (Pen. Code, § 266h, subd. (a)),[1] and the trial court sentenced Ramirez to three years in prison. Ramirez contends (1) the court erred in not sua sponte giving a unanimity instruction; and (2) insufficient evidence supports the verdict. We conclude that Ramirez's arguments lack merit, and accordingly we affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

On February 4, 2015, as part of a police vice unit operation targeting prostitution, San Diego Police Detective Manuel Dominguez replied to an Internet advertisement for an escort, who identified herself as "Jessica" but was later identified as Ashley L. Detective Dominguez was informed by text message of what Ashley would charge, and he arranged to meet her at a hotel. After arriving at the hotel, Detective Dominguez went to Ashley's room and arranged to pay her for sex. Detective Dominguez then gave the arrest signal to his colleagues, and Ashley was arrested.

Detective Dominguez next found out from the hotel registry that the room was registered to Eric Jimenez. In a car in the hotel parking lot, Detective Dominguez located Jimenez and Ramirez and then detained them in a patrol car. While in the patrol car, Jimenez and Ramirez were recorded talking about what story to tell the police, whether Ashley would "snitch" and why Ashley got caught by the police. During the

---

1    Unless otherwise indicated, all further statutory references are to the Penal Code.

2

conversation, Ramirez stated "I'm a pimp," and remarked that he hoped the police "didn't find the money."

Police searched the car, which belonged to Ramirez, and found women's panties, condoms and a brand of prepaid gift cards often used by pimps and prostitutes. On Ramirez's cell phone, police found text messages between Ramirez and Ashley, including (1) Ramirez's text message to Ashley stating, "When you come back, give me the dough after every client, give me the money, we are going halves"; (2) Ramirez's text message to Ashley instructing her what services to provide a client, which stated "no head, no bare, just do it with him"; and (3) Ashley's text message to Ramirez stating, "I need condoms."

When Detective Dominguez questioned Ramirez a short time later, Ramirez initially denied being a pimp for Ashley, but he eventually admitted that two weeks earlier Ashley had asked him "to pimp her out" and he said yes. Ramirez did not admit that he had received any money from Ashley, but he did state that Ashley had been buying food for him and paying for him to stay at the hotel.

Ramirez was charged with one count of pimping (§ 266h, subd. (a)) and one count of pandering by encouraging (§ 266i, subd. (a)(2)).

Jimenez and Ashley both testified at trial. When Jimenez testified, he admitted to telling Detective Dominguez that (1) Ramirez had bragged to him about being a pimp; (2) Ramirez told him he had been pimping Ashley "for a while;" and (3) Ramirez stated that he had $2,000 in his car, $500 of which was from prostitution.

Ashley admitted to engaging in prostitution but denied that Ramirez was her pimp. Ashley testified that Ramirez was a friend who was helping her by giving her rides, getting hotel rooms for her and letting her use his phone, but she claimed that she did not give any money to Ramirez.

At trial, defense counsel argued that the jury should return a guilty verdict on the lesser included offense of *attempted* pimping, but the evidence did not show that Ramirez was guilty of either of the charged crimes.

The jury found Ramirez not guilty of pandering but guilty of pimping. The trial court sentenced Ramirez to a three-year prison term.

## II.

## DISCUSSION

A.    *The Trial Court Did Not Err in Failing to Give a Unanimity Instruction*

We first consider Ramirez's argument that the trial court prejudicially erred in not sua sponte giving a unanimity instruction to the jury.

" '[A]ssertions of instructional error are reviewed de novo.' [Citation.] Whether or not the trial court should have given a 'particular instruction in any particular case entails the resolution of a mixed question of law and fact,' which is 'predominantly legal.' [Citation.] As such, it should be examined without deference." (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 568 (*Hernandez*).)

The requirement that the jury be instructed on unanimity in certain cases is based on the principle that "[i]n a criminal case, a jury verdict must be unanimous." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*).) "[C]ases have long held that when the

4

evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.] [¶] This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' " (*Ibid.*)

"A unanimity instruction is required only if the jurors could otherwise disagree which act a defendant committed and yet convict him of the crime charged." (*People v. Maury* (2003) 30 Cal.4th 342, 423.) "[T]he unanimity instruction is appropriate 'when conviction on a single count could be based on two or more discrete criminal events,' but not 'where multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event.' [Citation.] In deciding whether to give the instruction, the trial court must ask whether (1) there is a risk the jury may divide on two discrete crimes and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime. In the first situation, but not the second, it should give the unanimity instruction." (*Russo*, *supra*, 25 Cal.4th at p. 1135.) "A requirement of jury unanimity typically applies to acts that could have been charged as separate offenses." (*Maury*, at p. 422.)

As relevant here, " 'a unanimity instruction is not required when the case falls within the continuous course of conduct exception.' " (*People v. Jenkins* (1994) 29 Cal.App.4th 287, 298-299.) "The continuous course of conduct exception arises in two contexts. [Citation.] ' "The first is when the acts are so closely connected that they form

5

part of one and the same transaction, and thus one offense. [Citation.] The second is when . . . *the statute* contemplates a continuous course of conduct of a series of acts over a period of time." ' " (*Hernandez*, *supra*, 217 Cal.App.4th at p. 572.) Under this second approach, "[t]he continuous course of conduct exception has been 'applied to varying crimes that cover " 'repetitive or continuous conduct' " [citation] such as child abuse [citations]; misdemeanor child annoyance or molestation [citations]; *pimping* [citation]; pandering [citation]; failure to provide for a minor child [citation]; contributing to the delinquency of a minor [citation]; and dissuading a witness from testifying [citation].' " (*Jenkins*, at p. 299, italics added.)

Ramirez contends that the jury should have been given a unanimity instruction because the jury could have convicted him of pimping based on two separate acts, namely either (1) his alleged pimping activity on days *before* Detective Dominguez targeted Ashley on February 4, 2015; or (2) his alleged pimping activity on February 4, 2015. Ramirez contends that because there is no evidence that he ever received any money from Ashley for prostitution on February 4, 2015, although some jurors may have decided to convict him of pimping based on the events of February 4, 2015, other jurors may have based a conviction on earlier activity. According to Ramirez, the jury therefore should have been instructed that they had to come to a unanimous agreement on the act that constituted pimping. As we will explain, Ramirez's argument fails because case law specifically identifies the crime of pimping as falling under the continuous course of conduct exception.

The crime of pimping is committed by a person "who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of the person's prostitution . . . or who solicits or receives compensation for soliciting for the person." (§ 266h, subd. (a).) As described in the pimping statute, "living or deriving support or maintenance from the earnings of a prostitute or proceeds of her prostitution knowing her to be a prostitute is an ongoing continuing offense that occurs over a period of time." (*People v. Lewis* (1978) 77 Cal.App.3d 455, 462.) Based on the statutory language, pimping has been held to be a crime " 'of a continuous ongoing nature.' " (*People v. Leonard* (2014) 228 Cal.App.4th 465, 489.) Because pimping has "been held to be [a] crime[] of a continuous ongoing nature" it is "therefore not subject to the requirement the jury must agree on the specific act or acts constituting the offense." (*People v. Dell* (1991) 232 Cal.App.3d 248, 266.) Therefore, the trial court was not required to give a unanimity instruction here.

B.     *Substantial Evidence Supports the Pimping Conviction*

As we have explained, the crime of pimping is committed by someone "who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of the person's prostitution . . . or who solicits or receives compensation for soliciting for the person." (§ 266h, subd. (a).) Ramirez contends that insufficient evidence supports a finding that he received any of Ashley's earnings from prostitution because Jimenez was the only person who testified that Ramirez received money from Ashley. As Ramirez points out, because Jimenez was an accomplice, his uncorroborated testimony could not be used to support the verdict. As

7

we will explain, we reject the argument because Jimenez's testimony *was* corroborated, and in any event, sufficient evidence supports the conviction even *without* Jimenez's testimony.

Section 1111 provides that "[a] conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." (*Ibid.*) Here, the trial court determined that Jimenez was an accomplice and thus instructed the jury with CALCRIM No. 335 that it could not convict Ramirez based on Jimenez's testimony alone and could rely on Jimenez's testimony only if it was supported by other credible evidence.

Ramirez contends that there was no corroborating evidence to support Jimenez's testimony that Ramirez had received $500 from pimping activity, and thus the conviction for pimping was improperly based on uncorroborated accomplice testimony. We disagree. When accomplice testimony is offered, " ' "[t]he requisite corroboration may be established entirely by circumstantial evidence. . . . Such evidence 'may be slight and entitled to little consideration when standing alone.' " ' . . . ' "Corroborating evidence 'must tend to implicate the defendant and therefore must relate to some act or fact which is an element of the crime but it is not necessary that the corroborative evidence be sufficient in itself to establish every element of the offense charged.' . . ." ' In this regard, 'the prosecution must produce independent evidence which, without aid or assistance from the testimony of the accomplice, tends to connect the defendant with the crime

8

charged. . . .' . . . ' "Corroborating evidence is sufficient if it substantiates enough of the accomplice's testimony to establish his credibility . . . ." ' " (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1128, citations omitted (*Rodrigues*).)

Here, ample independent evidence connected Ramirez with the crime of pimping, and thus provided sufficient corroborating evidence to allow the jury to consider Jimenez's testimony that Ramirez received $500 from pimping when deciding Ramirez's guilt. Specifically, completely independent of Jimenez's testimony, the jury heard evidence (1) that Ramirez was recorded while in the patrol car saying "I'm a pimp" and expressing concern about whether the police would "find the money"; (2) Ramirez sent text messages to Ashley instructing her to bring him the money after every client, stating that they "are going halves," and also instructing her what services to provide to a client; and (3) Ramirez admitted to Detective Dominguez that he had been a pimp for Ashley for two weeks and that he had at least received food and lodging from the prostitution proceeds.

This evidence is more than sufficient to constitute " 'independent evidence which, without aid or assistance from the testimony of the accomplice, tends to connect the defendant with the crime charged' " (*Rodrigues*, *supra*, 8 Cal.4th at p. 1128), and thus Jimenez's testimony about the $500 could properly be relied upon as substantial evidence to support a finding that Ramirez received money from Ashley's prostitution.

Moreover, even *without* Jimenez's testimony that Ramirez received $500 from his pimping activities, the evidence sufficiently supports a pimping conviction against Ramirez based on Ramirez's own admissions. Specifically, the crime of pimping does

9

not require the receipt of *money* by the defendant, but instead requires only that the defendant "lives or derives *support or maintenance* in whole or in part from the earnings or proceeds of the person's prostitution."  (§ 266h, subd. (a), italics added.)  Here, Ramirez admitted that Ashley had been using her earnings from prostitution to buy food for him and pay for him to stay at the hotel.  That evidence supports a pimping conviction because it shows that Ramirez derived support or maintenance in whole or in part from the proceeds of Ashley's prostitution.

DISPOSITION

The judgment is affirmed.


IRION, J.

WE CONCUR:


McDONALD, Acting P. J.


AARON, J.

10