Filed 8/11/16  P. v. Godina CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANTONIETTE GODINA,<br><br>    Defendant and Appellant. | D068299<br><br><br>(Super. Ct. No. SCS276118) |

APPEAL from a judgment of the Superior Court of San Diego County, Garry G. Haehnle, Judge.  Affirmed as modified.

Benjamin B. Kington, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler and Julie L. Garland, Assistant Attorneys General, Arlene A. Sevidal and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

Antoniette Godina pleaded guilty to one felony count of unlawfully importing a usable amount of a controlled substance into California.  (Health & Saf. Code, § 11352,

subd. (a).) The court imposed a four-year split sentence, with the first two years to be served in jail followed by two years of mandatory supervision. (Pen. Code, § 1170, subd. (h)(5)(B).) Godina argues that three supervision terms are unconstitutional. For reasons we will explain, we conclude one of her arguments has merit. Therefore, we will modify one term of her supervision and affirm the judgment as modified.

FACTUAL BACKGROUND

The facts are not in dispute, and we take them from the probation report. In November 2014, based on a computer-generated alert, United States Customs and Border Protection Officers detained Godina when she drove across the border from Mexico into the United States. They searched her car and found in it approximately 3.97 pounds of black tar heroin and approximately 2.29 pounds of white powder heroin. Godina initially admitted to law enforcement authorities that she was hired to transport the narcotics into the United States. Godina later recanted, but told the probation officer that when she was stopped at the border, one of the passengers in her car indicated to her to not say anything, mentioning that her family was from Sinaloa, Mexico. Godina took that to mean the passenger's family was in the Sinaloa drug cartel and knew where Godina lived.

In exchange for her guilty plea to one count of unlawfully importing a usable amount of heroin, the People dismissed a charge of possession for sale of a controlled substance. (Health & Saf. Code, § 11370.4, subd. (a)(1).)

The narrative portion of the probation report states: "The defendant was assessed by the COMPAS [correctional offender management profiling for alternative sanctions] assessment tool. [¶] The assessed level of risk for recidivism suggests that the defendant

2

is likely to be successful with minimal intervention and that mandatory supervision would adequately serve to protect the community. Intervention at a more intrusive level could prove ineffective or counter-productive based upon available research." The probation officer also stated: "This is the defendant's first conviction. The defendant currently attends East LA Community College and is studying Sociology. Her studies will be interrupted if she is sentenced to local prison. She hopes to someday obtain Bachelor's and Master's degrees in Sociology."

The probation officer wrote that Godina, who was 24 years old, had smoked marijuana at the age of 18 and last smoked it at the age of 19. The probation officer also stated that Godina was not working at the time of her arrest, and concluded, "[Godina] stated she receives no financial support from her family. A poor financial situation is often present when people get involved in the transportation/importation of illegal drugs."

At sentencing, the trial court imposed supervision terms requiring Godina to: (1) "obtain [the probation officer's] approval as to residence [and] employment." (2) "not knowingly use/possess a firearm, ammunition or deadly weapon"; and (3) "participate and comply with any assessment program if directed by the [probation officer]." Godina did not object to these supervision terms at the sentencing hearing.

DISCUSSION

Godina contends: "The probation condition giving the probation department unqualified power to approve or disapprove [her] place of residence or employment is

3

untailored and overbroad and violates [her] First Amendment rights to travel and free association."[1]

Probation terms may limit constitutional rights if those limitations are reasonably necessary to meet the goals of probation. (*People v. Bauer* (1989) 211 Cal.App.3d 937, 940-941 (*Bauer*).) Judicial discretion to set terms of probation is circumscribed by constitutional considerations. (*People v. Hackler* (1993) 13 Cal.App.4th 1049, 1058.) When a term impinges on a constitutional right, it must be carefully tailored and reasonably related to the compelling state interest in reformation and rehabilitation. (*People v. Quiroz* (2011) 199 Cal.App.4th 1123, 1128.) Where, as here, a probation term is challenged on its face as unconstitutional, our review is de novo. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.) Facial challenges to the constitutionality of probation conditions may be raised on appeal without prior objection in the trial court. (*In re Sheena K.* (2007) 40 Cal.4th 875, 883, 887-889.)

When an offender chooses probation, thereby avoiding incarceration, state law authorizes the sentencing court to impose conditions on such release that are "fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and . . . for the reformation and rehabilitation of the probationer." (Pen. Code, § 1203.1, subd.

---

[1] The propriety of a residence approval probation condition in a case involving possession of drugs and misdemeanor drug use is currently before the California Supreme Court. (*People v. Schaeffer*, review granted Oct. 31, 2012, S205260.) Additionally, although the precise issue presented here concerns conditions of *mandatory supervision*, rather than conditions of *probation*, we apply the same standards to evaluate their validity and reasonableness. (*People v. Martinez* (2014) 226 Cal.App.4th 759, 763-764.)

(j).)  Accordingly, the California Supreme Court has recognized a sentencing court has "broad discretion to impose conditions to foster rehabilitation and to protect public safety pursuant to Penal Code section 1203.1."  (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.)

The sentencing court abuses its discretion when its determination is arbitrary or capricious or "exceeds the bounds of reason, all of the circumstances being considered." (*People v. Giminez* (1975) 14 Cal.3d 68, 72.)  A term of supervision "will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' "  (*People v. Lent* (1975) 15 Cal.3d 481, 486.)  "This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term.  [Citations.]  As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality."  (*People v. Olguin* (2008) 45 Cal.4th 375, 379-380.)  A "court may leave to the discretion of the probation officer the specification of the many details that invariably are necessary to implement the terms of probation.  However, the court's order cannot be entirely open-ended." (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1358-1359 (*O'Neil*).)

### I. *The Residency and Employment Requirement*

As Godina pleaded guilty to importing a controlled substance, the appropriate inquiry is whether the condition that she obtain the probation officer's approval as to residence and employment is reasonably related to her supervision. In *Bauer,* upon which Godina relies, the court struck a residence-approval condition, which seemed designed to prevent the defendant from living with his parents because they were overprotective. Nothing in the record suggested that the defendant's home life contributed to the crimes of which he was convicted (false imprisonment and simple assault), or that his home life was reasonably related to future criminality. (*Bauer, supra,* 211 Cal.App.3d at p. 944.) The court concluded that the residence approval condition impinged on the right to travel and freedom of association, and it was extremely broad since it gave the probation officer the power to forbid the defendant from living with or near his parents. (*Ibid.*)

The present case is distinguishable from *Bauer*. Godina committed a grave crime, crossing an international border and, possibly at the direction of a drug cartel, attempting to import into the state a significant amount of drugs. Under these circumstances, where she lives may directly affect her rehabilitation. For example, without any limitations, she could choose to live in a residence where drugs are used or sold. Thus, the state's interest in Godina's rehabilitation is properly served by the residence-approval condition. Moreover, probation conditions "should be given 'the meaning that would appear to a reasonable, objective reader.' " (*People v. Olguin, supra,* 45 Cal.4th at p. 382.) We

presume a probation officer will not withhold approval of a residence for an irrational or capricious reason. (*Id.* at p. 383.)

The employment condition at issue here enables the probation department to monitor other specific conditions of supervision imposed by the trial court. Further, in light of the probation office's conclusion that Godina's unemployment was possibly related to her getting involved in importing drugs into the country, the state has a reasonable interest in ensuring Godina's employment is approved by her probation officer to prevent future criminality. (See *People v. Lewis* (1978) 77 Cal.App.3d 455, 464 [upholding probation order that precluded defendant from working in specified locations and required "that defendant maintain employment to be approved by the probation officer"].)

We conclude that the trial court did not abuse its discretion in imposing the condition that Godina, as a term of her mandatory supervision, obtain the approval of her probation officer as to her residence and employment.

II. *The Assessment Program Requirement is Overbroad*

Godina contends the condition requiring her to participate and comply with any assessment program if directed by the probation officer is an overbroad delegation of power.

When it comes to participation in court-ordered programs, conditions leaving the selection and scheduling of programs within the discretion of the probation officer have been upheld. "The trial court is poorly equipped to micromanage selection of a program, both because it lacks the ability to remain apprised of currently available programs and,

7

more fundamentally, because entry into a particular program may depend on mercurial questions of timing and availability." (*People v. Penoli* (1996) 46 Cal.App.4th 298, 308 (*Penoli*); see *In re Moriah T.* (1994) 23 Cal.App.4th 1367.) Even if the court could be more specific in its order, that does not necessarily render it overbroad. (*Penoli,* at p. 308 ["Desirable as such a narrowing of the probation officer's discretion might be, however, we are not prepared at this time to hold that its absence constitutes prejudicial error"].)

As to the separate question of whether the condition is vague under the constitution because it provides insufficient notice of what would be expected of the defendant, the court in *Penoli* found that notice was satisfied if the probationer's trial attorney had actual knowledge of what the program ordered by the court would typically entail in terms of treatment and duration. (*Penoli, supra,* 46 Cal.App.4th at p. 309.) Such an order also does not have to be specific regarding how compliance with the program will be assessed since it is ultimately up to the sentencing court to determine compliance with conditions of probation, not the probation officer. (*Id.* at p. 310.)

Here, the challenged condition does not specify what types of assessment programs the probation officer can order Godina to participate in and thus appears to convey upon the probation officer the kind of unfettered discretion that California courts have repeatedly found vague and overbroad. (See *Bauer, supra,* 211 Cal.App.3d at pp. 943-945; *O' Neil, supra,* 165 Cal.App.4th at pp. 1357-1358.)

The People cite to *Penoli* in arguing that the identical condition is not vague or overbroad, but such an argument is unavailing. *Penoli* did permit a fair amount of discretion to be exercised by the probation officer in selecting a program, but the

8

contested condition in *Penoli* stated that the treatment was for drug abuse. (*Penoli, supra,* 46 Cal.App.4th at pp. 301-302.) *Penoli* does not stand for the proposition that a probation officer can be given the power to order participation in a program without any guidance regarding the program's purpose. Furthermore, a condition ordering a probationer to participate in polygraph examinations and answer questions posed to him truthfully as part of a sex offender treatment program was found constitutionally permissible. (*Brown v. Superior Court* (2002) 101 Cal.App.4th 313, 320-321.) However, such a condition must limit the questions asked to those relevant to the probationer's rehabilitation and the crime of conviction. (*Id.* at p. 321.)

Thus, in the absence of any language restricting the assessments to the task of assessing problems related to defendant's rehabilitation or crime of conviction, this supervision condition is overbroad and we modify it to state that Godina is required to participate in an assessment program which relates to the dangers and harms of drug smuggling and trafficking if directed by the probation officer.

### III. *The Weapons Use or Possession Term*

Godina asserts the supervision term regarding weapons fails to allow for lawful use of weapons to defend herself. She requests we modify the term accordingly. Relying on this court's opinion in *People v. Forrest* (2015) 237 Cal.App.4th 1074, the People urge us to reject this contention. Unlike the defendant in *Forrest*, however, Godina was not convicted of a violent crime. (*Id.* at pp. 1076, 1083.) Nonetheless, *Forrest* is instructive, as we concluded the omission of a reference to self-defense did not render the condition

9

overbroad under the constitution because no law enforcement officer would consider defendant's fleeting use of a weapon in self-defense as a probation violation. (*Id.* at p. 1083.)

Here, if Godina possessed or used a dangerous or deadly weapon in self-defense, she could establish her possession or use was not willful, i.e., the absence of mens rea, at the probation violation hearing. "A court may not revoke probation unless the evidence supports 'a conclusion [that] the probationer's conduct constituted a willful violation of the terms and conditions of probation.' " (*People v. Cervantes* (2009) 175 Cal.App.4th 291, 295.) Accordingly, we find no reason to modify this condition to specifically exclude the possession or use of a weapon in self-defense.

DISPOSITION

We modify the supervision requirement regarding assessments to state that Antoniette Godina must "participate and comply with any assessment program relating to the dangers and harms of drug smuggling and drug trafficking if directed by the probation officer." The judgment is modified as set forth in this opinion and otherwise affirmed.


O'ROURKE, J.

WE CONCUR:


BENKE, Acting P. J.


McDONALD, J.

11