Filed 8/22/24  P. v. Giral CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAYMOND GIRAL,<br><br>    Defendant and Appellant. | 2d Crim. No. B329286<br>(Super. Ct. No. 2022005875)<br>(Ventura County) |

Raymond Giral appeals from a judgment following a trial at which the jury found him guilty of four counts of committing a lewd act upon a child (Pen. Code[1], § 288, subd. (a); counts 1-4). As to counts one through three, the jury found true the allegation that appellant had substantial sexual contact with the victim. (§ 1203.066, subd. (a)(8).)  The court sentenced appellant to 12 years in state prison.

---

[1] Undesignated statutory references are to the Penal Code.

Appellant contends:  (1) the evidence was insufficient as to intent regarding counts 1-3 and the attendant section 1203.066 allegations; (2) the court erred in allowing testimony under the fresh complaint doctrine; (3) the court improperly admitted evidence of appellant's prior convictions and pornography; and (4) the instruction on child sexual abuse accommodation syndrome was improper.  We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Background Information*

Appellant and Serena married in 1990.  In March 1999 they had twins, a boy and a girl, J.G.  Appellant's alcohol issues led to a divorce in 2007.  Appellant moved into a condominium, and the children lived primarily with their mother.  Appellant took the children each Wednesday evening and on alternating weekends.  J.G. slept in a bed with appellant and her brother slept on the floor.

After about two years, appellant moved in with his ailing mother.  The children also stayed with appellant at this four-bedroom house.

In 2012, appellant moved to Colorado to be with Meredith, whom he married in 2013.  Meredith already had two children, including a daughter M.H., who was born in 2000.  J.G. and her brother would visit appellant at least twice a year.  Every time she visited appellant in Colorado, J.G.'s stomach would hurt, and she would vomit the first day she arrived.

In 2018, Meredith realized appellant's computer had nude images of M.H. in her room.  Small cameras were later found in appellant's nightstand.  When Serena told J.G. what had happened, J.G. began crying and said now everybody will know appellant molested J.G.  That day, J.G. made a report to law enforcement.

*Count 1*

J.G. testified that when she was seven or eight years old and sleeping at appellant's condominium, she woke up to find appellant's hand in her pants. Appellant had been drinking alcohol that day. Generally, by the end of a night when appellant had been drinking, he would be slurring his words and stumbling over himself.

On this night, using his fingers, appellant made back and forth movements on or inside J.G.'s labia. She did not recall appellant's fingers entering her vagina. She described appellant as "asleep" or "unconscious." "His eyes were closed," but J.G. was unsure if he was awake or "actually unconscious."

*Count 2*

When J.G. was eight or nine years old, J.G., her brother, and appellant were watching television on the couch at the home of appellant's mother. Appellant was drinking. All three fell asleep on the couch. J.G. awoke to find appellant's hand down her pants. Appellant touched J.G.'s labia; his fingers made the same back and forth movement. Two or three times, she heard him lick his fingers before putting them back in her pants. J.G. pulled his hand out of her pants and moved to sit on a chair.

*Counts 3 (Touching) & 4 (Kissing)*

About two weeks later, when appellant was under the influence of alcohol and slurring his words, he made J.G. straddle him on the bed and tried to teach her to "make out" with him. Appellant licked J.G.'s lips all over and put his tongue inside her mouth. When J.G. resisted, appellant grabbed her head and pulled it back toward him. Incidents like this one occurred two or three times.

J.G. also recalled a touching incident in bed with appellant at his mother's house. J.G. again awoke to find appellant's hand

3

down her pants.  He was rubbing her vagina like before.  J.G. knew it was wrong this time.  She pulled his hand out of her pants and went back to bed.

*Other Incidents*

When J.G. was about five or six years old, appellant had her sit on his lap while he showed her pornographic pictures. J.G. was "confused."

When J.G. was around nine or ten, appellant called her into his room after she had finished a bath.  J.G. said she was getting dressed, and appellant yelled at her to come to his room right now.  She did.  Appellant asked J.G. to take off her towel, which she did not want to do.  Appellant said he wanted to see the woman she was becoming and made her take off the towel.  He looked J.G. up and down and said her pubic hair "was so long that he could braid it."

On another occasion, possibly the same night as the touching on the couch, appellant spoke to his children while he was naked from the waist down.  Slurring his words, a drunken appellant told them to go to bed.

On a visit to Colorado when J.G. was about 13 or 14, appellant commented that J.G. had grown into a woman and had a big butt.  J.G. felt uncomfortable.

When J.G. was in college and about 17 or 18, appellant sent her a text message indicating he was glad she was a virgin and not sleeping around with boys.

*J.G.'s Report to Autumn Hall*

The first person J.G. told about appellant's conduct was Autumn Hall, her best friend at the time.  During a phone call in eighth or ninth grade, J.G. told Hall appellant had molested her when she was younger.  J.G. did not go into detail.  J.G. testified she was not upset during the call.

Hall testified that when she and J.G. were in eighth or ninth grade, J.G. expressed that appellant had touched her in a sexually inappropriate manner. Hall recalled that J.G. was crying and very visually upset, which she could also hear in J.G.'s voice. Hall could not remember whether the disclosure happened over the phone or in person.

*Colorado Incident and Forensics*

In 2019, Appellant pleaded guilty to two counts of sexual exploitation of a child for surreptitiously video recording his 17-year-old daughter M.H. He was sentenced to eight years in the Colorado Department of Corrections.

Digital forensic investigator Sean Fillmore examined appellant's laptop seized in the Colorado case. Fillmore found 19 videos and just under 1,000 images of M.H., not counting duplicates. He also located web searches and addresses evincing an interest in young girls. Those included searches on pornography websites for "very young teen first time" and "young teen abused."

Fillmore examined appellant's phone. He found videos and stills of M.H. similar to those on the computer. Fillmore also located similar pornography searches, including for "very young sexual punishment," "cute daughter forced," and "screw my hot daughter."

*Child Sexual Abuse Accommodation Syndrome*

Dr. Anthony Urquiza testified as an expert on Child Sexual Abuse Accommodation Syndrome (CSAAS). Dr. Urquiza explained CSAAS is neither a diagnosis for child sexual abuse nor a mental health disorder. Instead, it is a description of what occurs with sexually abused children. Dr. Urquiza did not interview any witnesses or victims in this case, nor did he review any police reports.

5

DISCUSSION

*Sufficiency of the Evidence*

Appellant argues the evidence was insufficient as to intent regarding counts 1-3 and the attendant section 1203.066 allegations. We disagree.

"Our task is clear. 'On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Cravens* (2012) 53 Cal.4th 500, 507.) "In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'" (*People v. Avila* (2009) 46 Cal.4th 680, 701.) "'We do not reweigh evidence . . . . Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.'" (*People v. Brown* (2014) 59 Cal.4th 86, 106.)

Section 288, subdivision (a) requires a specific intent "of arousing, appealing to, or gratifying the lust, passions, or sexual desires of [the accused] or the child . . . ." (§ 288, subd. (a); *People v. Villagran* (2016) 5 Cal.App.5th 880, 890-891.) Section 1203.066 limits the trial court's sentencing discretion regarding defendants who, in violating section 288, have substantial sexual conduct with a victim under 14 years of age. (§ 1203.066, subds. (a)(8), (b).) "Substantial sexual conduct" under section 1203.066 "refers to certain acts . . . but does not require any kind of specific intent." (*People v. Garcia* (2014) 229 Cal.App.4th 302, 312, fn. 3; see also *People v. Avina* (1993) 14 Cal.App.4th 1303, 1313.)

Substantial evidence supports the jury's conclusion that appellant acted with the requisite intent for counts 1-3. Each time, appellant touched J.G.'s labia. Each time, he moved his

6

fingers back and forth. This repetitive motion, itself repeated on multiple occasions, indicates intentional sexual behavior. The touching occurred in the context of appellant sexualizing J.G. for over a decade, beginning with showing her pornography at five or six years old and continuing through inappropriate comments in J.G.'s teenage years. Appellant also forced J.G. to "make out" with him, conduct which evinces a sexual intent toward J.G. As does appellant licking his fingers during one touching incident.

While appellant's inebriation might run counter to an intent finding, the jury could reasonably deduce a sexual intent given the totality of the evidence. The jury found appellant guilty on all four counts despite receiving an instruction on voluntary intoxication. We will not invade the jury's province by reweighing the evidence to reach a contrary result.

*Fresh Complaint Doctrine*

Appellant asserts the trial court erred in admitting Autumn Hall's testimony under the fresh complaint doctrine. No error occurred.

Under the fresh complaint doctrine, "proof of an extrajudicial complaint, made by the victim of a sexual offense, disclosing the alleged assault, may be admissible for a limited, nonhearsay purpose—namely, to establish the fact of, and the circumstances surrounding, the victim's disclosure of the assault to others—whenever the fact that the disclosure was made and the circumstances under which it was made are relevant to the trier of fact's determination as to whether the offense occurred." (*People v. Brown* (1994) 8 Cal.4th 746, 749-750 (*Brown*).)

Such evidence is still subject to exclusion under Evidence Code section 352. (*Brown*, *supra*, 8 Cal.4th at p. 763.) The "'freshness'" of the complaint is a factor to be considered in ruling on its admissibility but is not an "essential prerequisite[]." (*Id*. at

pp. 750, 763.)  We review for abuse of discretion, "reversing only if "'the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'"'"  (*People v. DeHoyos* (2013) 57 Cal.4th 79, 132; see also *People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

J.G.'s complaint to Hall refuted a potential inference that J.G. spoke of the abuse only upon learning appellant had recorded M.H.  Indeed, appellant argued at trial that the incident with M.H. likely motivated J.G. to lie about or imagine the molestation.  By refuting the inference of a false contagion effect, the complaint to Hall corroborated J.G.'s account.  The complaint also generally countered "erroneous inferences that might have arisen" regarding the delay between the offenses and J.G.'s report to police.  (*Brown*, *supra*, 8 Cal.4th at p. 764.)  Although J.G.'s disclosure occurred several years after the final touching, it also occurred several years before J.G.'s report to police.

The complaint's probative value was not substantially outweighed by the risk of undue prejudice or misleading the jury.  Hall did not recount any details regarding appellant's conduct.  Hall merely relayed J.G.'s disclosure that appellant had touched her in a sexually inappropriate manner.  Hall's description of the disclosure's emotional valence and impact on her is unsurprising given its content and was minimally prejudicial.  The trial court did not abuse its discretion.

*Admission of Colorado Convictions and Pornography*

Appellant argues the court erred in admitting his Colorado convictions, videos and images of M.H., and pornography searches and websites.  The court admitted this evidence under either Evidence Code section 1101 or 1108, or both.  We conclude reversal is unwarranted.

8

Evidence Code section 1101 "limits the admissibility of so-called 'propensity' or 'disposition' evidence offered to prove a person's conduct on a particular occasion." (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 822-823.) This rule does not prohibit admission of crimes or other acts to prove some other fact, such as intent. (Evid. Code, § 1101, subd. (b).)

Evidence Code section 1108[2] creates an exception to Evidence Code section 1101. It authorizes admission of evidence regarding the defendant's other sexual offenses unless it would be unduly prejudicial pursuant to Evidence Code section 352.[3] Evidence Code section 1108 creates a "presumption in favor of admissibility . . . ." (*People v. Merriman* (2014) 60 Cal.4th 1, 59.) Nevertheless, trial courts "must engage in a careful weighing process under [Evidence Code] section 352." (*People v. Falsetta* (1999) 21 Cal.4th 903, 917.) Factors the court should consider include "remoteness, the degree of certainty of its commission[,] and the . . . similarity to the charged offense." (*Ibid.*)

We review admission under Evidence Code sections 1101, 1108, and 352 for abuse of discretion. (*People v. Cordova* (2015)

---

[2] Evidence Code section 1108 states: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (Evid. Code, § 1108, subd. (a).)

[3] Evidence Code section 352 provides that "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

62 Cal.4th 104, 132; *People v. Thomas* (2023) 14 Cal.5th 327, 358.)

Appellant's Colorado convictions were admissible under Evidence Code sections 1101 and 1108. As to Evidence Code section 1101, appellant's convictions for recording M.H. revealed a sexual intent aimed at his young daughters. Differences in age, biological relation, and type of conduct toward M.H. and J.G. do exist. However, "'[t]he least degree of similarity . . . is required in order to prove intent.'" (*People v. Foster* (2010) 50 Cal.4th 1301, 1328.) The conduct need only be sufficiently similar "'to support the inference that the defendant "'probably harbor[ed] the same intent in each instance.'"'" (*Ibid*.) Appellant's conduct toward his biological daughter and stepdaughter meets this threshold.

Evidence Code section 1108 likewise authorized admission of the Colorado convictions. In addition to the similarity in victim profile, the certainty of commission is beyond dispute given that appellant pleaded guilty. Nor did an unusually long period elapse between the offenses against J.G. and M.H. Appellant's conduct against M.H. was also less egregious than the charged conduct against J.G. Appellant has not overcome the presumption of admissibility under Evidence Code section 1108.

Like the Colorado convictions, evidence of the images and videos of M.H. found on appellant's devices were admissible under Evidence Code sections 1101 and 1108. The prosecution was not obliged to rely solely on the antiseptic stipulation of convictions. (Cf. *People v. Johnson* (2015) 61 Cal.4th 734, 767.)

Finally, pornography searches and website visits demonstrating an interest in youth, forced encounters, and daughters were admissible under Evidence Code section 1101 to prove appellant's intent toward J.G. Pornography need not perfectly match the charged conduct "to establish relevance on

the issue of intent." (*People v. Byers* (2021) 61 Cal.App.5th 447, 454.) These types of pornography resembled the charged conduct closely enough to be admissible. To the extent certain searches lacked a clear connection to these themes, any error was harmless under any standard given that J.G.'s compelling testimony was corroborated both by her disclosure to Hall and appellant's other acts.

As our Evidence Code section 1108 analysis indicates, evaluating the evidence through the lens of Evidence Code section 352 does not necessitate reversal. Setting aside the searches whose admission was at worst harmless error, the risk of undue prejudice or confusion did not substantially outweigh any of the remaining evidence's probative value.

*CALCRIM No. 1193*

Appellant contends the court erroneously instructed the jury under CALCRIM No. 1193.[4] We disagree.

Appellant claims the instruction asked for the impossible—use CSAAS to evaluate J.G.'s believability without using it as

---

[4] As given in this case, CALCRIM No. 1193 instructed: "You have heard testimony from Dr. Anthony Urquiza regarding child sexual abuse accommodation syndrome. [¶] Child abuse accommodation syndrome relates to a pattern of behavior that may be present in child sexual abuse cases. Testimony as to the accommodation syndrome is offered only to explain certain behavior of an alleged victim of child sexual abuse. [¶] Dr. Anthony Urquiza's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him or any crimes or conduct with which he was not charged. [¶] You may consider this evidence only in deciding whether or not [J.G.'s] conduct was consistent with the conduct of someone who has been molested, and in evaluating the believability of the alleged victim."

evidence of the crimes.  We rejected a similar argument in *People v. Gonzales* (2017) 16 Cal.App.5th 494 (*Gonzales*).  In *Gonzales*, as here, the CSAAS expert testified that CSAAS is not a tool to help diagnose child sexual abuse.  (*Id.* at pp. 503-504.)  We concluded "[t]he CSAAS evidence simply neutralizes the victim's apparently self-impeaching behavior."  (*Id.* at p. 504.)  "Thus, under CALCRIM No. 1193, a juror who believes [Dr. Urquiza's] testimony will find both that [J.G.'s] apparently self-impeaching behavior does not affect her believability one way or the other, and that the CSAAS evidence does not show she had been molested.  There is no conflict in the instruction."  (*Ibid.*)

Appellant asserts the "'consistent with'" language converts CSAAS into a diagnostic tool by allowing the jury to conclude "that because J.G.'s conduct was 'consistent with' that of sexual abuse victims, her claims were true."  This argument reiterates the existence of an internal conflict in the instruction, which *Gonzales* rejected as illusory.

Nor does CALCRIM No. 1193 violate the principle of impartiality between the parties.  The instruction provides for consideration of CSAAS evidence "in deciding *whether or not* [J.G.'s] conduct was consistent with the conduct of someone who has been molested . . . ."  (italics added.)  This neutral phrasing favors neither side.  CSAAS evidence and the attendant instruction serve to "disabuse jurors of commonly held misconceptions of child sexual abuse . . . ."  (*Gonzales*, *supra*, 16 Cal.App.5th at p. 503, citing *People v. McAlpin* (1991) 53 Cal.3d 1289, 1301.)  Addressing those misconceptions "neutralizes the victim's apparently self-impeaching behavior" (*Gonzales*, at p. 504), leaving the parties free to argue and the jury to determine what the conduct may mean, including that the behavior (e.g., delay in reporting) could be indicative of falsehood.

12

CALCRIM No. 1193 does not improperly bolster the prosecution's case.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

CODY, J.

We concur:

GILBERT, P. J.

BALTODANO, J.

Anthony J. Sabo, Judge
Superior Court County of Ventura

_____


Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Rama R. Maline, Deputy Attorney General, for Plaintiff and Respondent.