Filed 6/12/26  P. v. Robinson CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

<table>
<tr><td>THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DWAYNE ROBINSON,<br><br>    Defendant and Appellant.</td><td>A170472<br><br>(San Mateo County<br>Super. Ct. No. 23-SF-010772-A)</td></tr>
</table>

Dwayne Robinson was convicted by a jury of human trafficking and pimping.  On appeal, he contends the trial court erroneously overruled his objection to the prosecutor's use of a peremptory challenge against a Black prospective juror because the main reason given by the prosecutor for exercising the challenge was presumptively invalid under Code of Civil Procedure section 231.7 ("section 231.7").  We conclude Robinson's claim under section 231.7 was not forfeited despite his failure to specifically object on presumptive invalidity grounds below.  We further hold the trial court erred in overruling the objection because the record did not contain clear and convincing evidence rebutting the presumptive invalidity of the challenge.  Accordingly, we reverse the judgment and remand for a new trial.

#### FACTUAL AND PROCEDURAL BACKGROUND

Unless stated otherwise, the following events took place in 2023.

1

Robinson was charged by information with human trafficking (Pen. Code, § 236.1, subd. (b); count one) and pimping (Pen. Code, § 266h, subd. (a); count two). The information alleged that between April 13 and July 5, Robinson unlawfully deprived and violated the personal liberty of the confidential victim (C.V.) with the intent to pimp her; solicited and received compensation for soliciting C.V. as a prostitute; and lived and derived support and maintenance from the earnings and proceeds of C.V.'s prostitution.

The evidence at trial included the following. On the evening of April 13, a witness heard a woman screaming and saw a man emerge from a white Jeep Cherokee and aggressively push C.V. to the ground. Police officers arrived at the scene and found C.V. in a hysterical and intoxicated state. She had a scraped knee and was crying and holding her chest. C.V. told an officer she had been hurt by "an ex-baby mama or an ex-girlfriend."

On May 25, the police set up a "human trafficking operation" at a hotel in Redwood City. An undercover officer found an internet advertisement for a woman named " 'Peach' " and arranged to meet her at the hotel. Officers later observed the same Jeep Cherokee from the April 13 incident pull into the parking lot and drop off C.V. Police officers entered the hotel room and found C.V. with her blouse off. Officers detained Robinson in the Jeep and found a box of condoms and a tablet device in the vehicle. Robinson was not arrested at the time, but the officers seized the tablet, Robinson's phone, and C.V.'s phone.

Forensic examinations of the seized devices revealed pictures of C.V. including the same pictures from the advertisements for " 'Peach' " and a photograph of a fresh abrasion on her knee. Officers ascertained that C.V. was the victim in the April 13 incident and believed Robinson was the

2

assailant because he matched the witnesses' descriptions of the suspect and was detained on May 25 in the same vehicle as in the April 13 incident. Location data also showed that Robinson's cellphone was pinging in the area of the April 13 incident around the time it occurred.

The forensic examinations uncovered evidence of C.V.'s acts of prostitution with clients in Morgan Hill and Gilroy. Officers further recovered numerous text messages between Robinson and C.V. in which Robinson repeatedly demanded money from C.V., pressured C.V. to engage in acts of prostitution with her "regular[s]" even when she was not feeling well or did not want to work, instructed C.V. not to drink and to read text messages from "tricks" (clients of prostitution), and threatened to put C.V.'s "head . . . on flat."

On July 12, police officers arrested Robinson, who was driving the same Jeep involved in the April 13 and May 25 incidents. Inside the vehicle, officers found condoms, fake eyelashes, and a phone. Extracted from the phone were several online posts related to pimping, and a suggestive photograph of C.V. that Robinson had sent to one of his contacts, with a message referring to her as "my hoe." There were also numerous text messages in which Robinson demanded money from C.V., and photographs sent to C.V. indicating Robinson was just outside her residence.

The jury found Robinson guilty on both the human trafficking and pimping counts. The trial court imposed a 14-year sentence on the trafficking count, and a three-year concurrent sentence on the pimping count. Robinson timely appealed.

## DISCUSSION

### A. Peremptory Challenge against R.M.

Robinson (who is Black) contends the prosecutor's use of a peremptory challenge against prospective juror R.M. (who appeared to be Black) violated section 231.7, subdivision (e)(1) ("section 231.7(e)(1)") and his constitutional rights under *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*) and *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*). We agree the peremptory challenge against R.M. violated section 231.7(e)(1).

### 1. *Additional Background*

During voir dire, prospective juror R.M. told the court he had a background in forensic medicine with the Los Angeles County coroner and had previously served on a criminal jury in San Mateo County. R.M. shared he had "a little bias towards way the judicial system ran" due to the outcome of a criminal case in which his son and grandson were victims. R.M. stated that while he was "not pleased" with the outcome of that case, it did not "sway" his feelings, and he could put the experience aside.

On questioning from the prosecutor, R.M. recounted that in December of the prior year, his son and grandson had gone to a friend's home to put a birthday invitation in the mailbox. After placing the three-year-old grandson in the car, the son was confronted by a man who apparently lived nearby. The man put a gun in the son's face and demanded he identify himself. R.M. called the police, who "collected an arsenal of weapons" from the man's home. R.M. estimated the man spent no more than six months in jail before receiving credit for time served. R.M. told the prosecutor that his "bias is towards that," as he felt the man should have received more time in jail. R.M. added, "I mean, my grandson said, 'Dad, let's get away from this crazy

4

man.' Three years old. He had sense to say that. Traumatizing. I wasn't thrilled with it because, I mean, I've seen situations like that, you know."

R.M. acknowledged he could not let sympathy or bias affect his deliberation as a juror, and he further noted that during his work in forensics, he had been able to make decisions based solely on the facts. Asked to identify the law enforcement agencies participating in the case involving his son and grandson, R.M. explained that the San Mateo Police Department made the initial arrest until the Sheriff's Department took over, and that the San Mateo District Attorney's Office handled the prosecution (i.e., two of the same entities here). R.M. denied having negative feelings towards law enforcement that would affect his impartiality, but he mentioned having "issues in the past with stereotypes and stuff."

The prosecutor exercised her peremptory challenge to excuse R.M., and the defense objected and made "a motion under *Batson*." Defense counsel further remarked that there was a new procedure under the California Racial Justice Act of 2020 (Pen. Code, § 745; Racial Justice Act), and that there also "might be a presumption." The prosecutor seemed to agree, stating, "[I]t's not called a *Batson* motion anymore. It does change it," and she requested a brief recess "to look up the current procedure." The court granted the request, stating, "I'll be in the back actually doing my own research."

After the recess, the trial court asked the prosecutor to explain her reasons for exercising the peremptory challenge against R.M. The prosecutor responded her "main reason" was R.M.'s displeasure with the outcome of the case involving his son and grandson and his belief that the defendant in that case should have received a longer sentence. As an additional reason for exercising the challenge, the prosecutor told the court that R.M. failed to disclose, in response to the jury questionnaire, that he, himself, had been a

5

defendant in at least "three cases here in San Mateo County." Though R.M. apparently matched the name and description of the defendant in those cases, the prosecutor explained she did not specifically ask R.M. about this during voir dire to avoid embarrassing him.

The trial court noted R.M. appeared to be Black and therefore "would be in one of cognizable groups affected under 231.7." The court determined, however, that there was no "substantial likelihood that an objectively reasonable person would view cognizable group membership as a factor in the use of this challenge." After first mentioning R.M.'s failure to disclose he was a defendant in prior criminal cases, the court then cited R.M.'s displeasure with the handling and outcome of the case involving his son and grandson. Based on these factors, the court overruled Robinson's objection to the prosecutor's peremptory challenge against R.M.

Defense counsel thereafter informed the court that Robinson's prior criminal cases involved drug charges that had been dismissed or expunged. The court responded it was R.M.'s failure to share the information on these cases notwithstanding their outcomes that was pertinent to the court's decision. The prosecutor then clarified that R.M.'s prior cases consisted of two drug-related charges and one domestic violence case for which R.M. served 70 days.

### 2. Section 231.7

Section 231.7 prohibits the use of a peremptory challenge "on the basis of [a] prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation," or "perceived membership . . . in any of those groups." (§ 231.7, subd. (a).) "The Legislature enacted section 231.7, effective in criminal trials beginning January 1, 2022, to establish 'a new process for identifying unlawful bias in

6

the use of peremptory challenges during jury selection' because studies showed that the existing *Batson*/*Wheeler* analysis . . . was inadequate to prevent racial discrimination." (*People v. Jimenez* (2024) 99 Cal.App.5th 534, 539–540 (*Jimenez*).)

"A party, or the trial court on its own motion, may object to the improper use of a peremptory challenge under subdivision (a). After the objection is made, any further discussion shall be conducted outside the presence of the panel." (§ 231.7, subd. (b).) "[U]pon objection to the exercise of a peremptory challenge pursuant to this section, the party exercising the peremptory challenge shall state the reasons the peremptory challenge has been exercised." (§ 231.7, subd. (c).) The trial court must then "evaluate the reasons given to justify the peremptory challenge in light of the totality of the circumstances," considering "only the reasons actually given." (§ 231.7, subd. (d)(1).) "If the court determines there is a substantial likelihood that an objectively reasonable person would view race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, as a factor in the use of the peremptory challenge, then the objection shall be sustained." (§ 231.7, subd. (d)(1).) For purposes of section 231.7, "an objectively reasonable person is aware that unconscious bias, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in the State of California." (*Id.*, subd. (d)(2)(A).)

"Section 231.7 also 'contains two separate provisions (subdivisions (e) and (g)) describing presumptively invalid reasons for the exercise of a peremptory challenge. Each subdivision sets out a distinct process by which a court determines whether a presumptively invalid reason can be absolved of that presumption.' " (*People v. Alston* (2026) 118 Cal.App.5th 575, 581.) As

7

relevant here, the challenge of a prospective juror who expresses "a distrust of or having a negative experience with law enforcement or the criminal legal system" (§ 231.7(e)(1)) is "presumed to be invalid unless the party exercising the peremptory challenge can show by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, and that the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case" (§ 231.7, subd. (e)).

"The denial of an objection made under this section shall be reviewed by the appellate court de novo, with the trial court's express factual findings reviewed for substantial evidence. The appellate court shall not impute to the trial court any findings, including findings of a prospective juror's demeanor, that the trial court did not expressly state on the record. The reviewing court shall consider only reasons actually given under subdivision (c) and shall not speculate as to or consider reasons that were not given to explain either the party's use of the peremptory challenge or the party's failure to challenge similarly situated jurors who are not members of the same cognizable group as the challenged juror, regardless of whether the moving party made a comparative analysis argument in the trial court. Should the appellate court determine that the objection was erroneously denied, the error shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial." (§ 231.7, subd. (j).)

As a preliminary matter, the People argue Robinson forfeited review of his section 231.7(e)(1) claim by failing to raise it below. (See *People v. Jaime* (2023) 91 Cal.App.5th 941, 946 [forfeiture rule applies to section 231.7 claims].) Robinson disagrees, noting his trial counsel made a timely and

8

sufficient objection by citing the procedures under the Racial Justice Act and arguing there "might be a presumption," which immediately led to a recess during which the parties and the trial court researched section 231.7. We agree with Robinson that applying forfeiture on these facts is unwarranted.

*People v. Espiritu* (2026) 119 Cal.App.5th 1128 (*Espiritu*) is instructive. There, the prosecutor exercised a peremptory challenge against a female prospective juror because of her employment as a nurse. (*Id.* at p. 1134.) Defense counsel lodged a general objection under section 231.7 without contending the prosecutor's stated reason for exercising the challenge was presumptively invalid under the statute. (See *Espiritu*, at p. 1134.) On appeal, the defendant more specifically argued the presumptive invalidity of the prosecutor's challenge under section 231.7, subdivision (e)(10), because nursing is a field disproportionately occupied by women.[1] (*Espiritu*, at p. 1135.) *Espiritu* declined to find forfeiture, reasoning it was "not confronted with a situation" in which a defendant wholly failed to object "under the applicable statute." (*Id.* at p. 1138.) Rather, the defendant's general objection "was sufficient to preserve an argument alleging error based on a category of presumptively invalid reasons not brought to the trial court's attention by defense counsel." (*Ibid.*)

As *Espiritu* explained, an objecting party need only lodge an objection under section 231.7 in order to trigger the "comprehensive process for parties and courts to follow." (*Espiritu, supra*, 119 Cal.App.5th at p. 1140.) "Beyond that, the statutory language does not expressly impose any other obligation

---

[1]     Under section 231.7, subdivision (e)(10), it is presumptively invalid to exercise a peremptory challenge against a prospective juror due to their "[e]mployment in a field that is disproportionately occupied by members listed in subdivision (a) or that serves a population disproportionately comprised of members of a group or groups listed in subdivision (a)."

9

on the objecting party. All other expressly assigned obligations belong to the party exercising the peremptory challenge or the trial court. Specifically, the party exercising the challenge is charged with explaining its reason(s) and overcoming the presumptive invalidity of any reason. [Citation.] And the court is tasked with evaluating the reasons using specified standards, ruling on the objection, explaining the reasons for its ruling on the record, and determining the proper outcome if it sustains the objection. [Citation.] This overall assignment of obligations is consistent with the Legislature's intended move away from the burden shifting and largely deferential evaluation which existed under the *Batson*/*Wheeler* framework." (*Espiritu*, at p. 1140.) "Although it may be well-advised for an objecting party to speak up and identify a potential presumptive invalidity notwithstanding a court's failure to consider the possibility, forfeiture does not follow from an objecting party's silence under such circumstances. The objecting party's initial objection under this statute preserves the right to challenge the court's failure to consider the presumptively invalid categories." (*Id.* at p. 1141, fn. omitted.)

The pertinent facts of this case strongly resemble those in *Espiritu*, with one distinction: Robinson's trial counsel cited the Racial Justice Act and did not name section 231.7 in objecting to the prosecutor's peremptory challenge. That distinction, however, is of no consequence given the record before us. Though section 231.7 is technically not part of the Racial Justice Act, Robinson's objection, which included mention of a possible presumption, was in fact sufficient to bring section 231.7 to the attention of the parties and the court. Indeed, section 231.7 was specifically mentioned after the recess, and the court, with no apparent objection from the prosecutor, used specific language from section 231.7, subdivision (d)(1), in its ruling. On this record, we are satisfied that Robinson's objection adequately apprised the trial court

10

and the prosecutor of the standards and requirements of section 231.7. That Robinson failed to specifically cite the presumption of invalidity under section 231.7(e)(1) did not result in forfeiture of his claim on appeal. (*Espiritu*, *supra*, 119 Cal.App.5th at pp. 1138, 1141.)

As the People see it, Robinson's failure to specifically object on presumptive invalidity grounds was significant because that omission deprived the prosecutor of the opportunity to overcome the presumption with further elaboration on her reasons for challenging R.M. because of his negative experience with law enforcement. We disagree. Having understood the objection to apply to section 231.7, which she evidently researched during the recess, the prosecutor was put on clear notice that her "main" reason for peremptorily challenging R.M. was presumptively invalid under section 231.7(e)(1). In light of that notice, the prosecutor was obligated to explain the reasons for her challenge in order to overcome the presumption. (See *Espiritu*, *supra*, 119 Cal.App.5th at p. 1140.) This she did not do.

We acknowledge the forfeiture rule "counsels an appellate court not to reach a nonpreserved claim when it has resulted in a void in the record that the court itself cannot or should not fill." (*People v. Smith* (2001) 24 Cal.4th 849, 855.) But here, the voir dire of R.M. had already been completed, and the prosecutor indicated no need to further develop the record in order to rebut section 231.7(e)(1)'s presumption of invalidity; she simply neglected to explain why the record was sufficient to rebut that presumption.

The People nevertheless argue the record is sufficiently developed for an appellate determination that the statutory presumption of invalidity was rebutted. In the People's view, the record contains clear and convincing evidence from which an objectively reasonable person would conclude the prosecutor's challenge was unrelated to R.M.'s race and was instead based on

11

legitimate concerns regarding his ability to be fair and impartial.  In particular, the People emphasize the following details from R.M.'s testimony: (1) R.M. repeatedly stated his displeasure with the outcome of the case involving his son and grandson, noting twice that it made him feel "bias[ed]"; (2) even though that case had occurred the year before, it still appeared to affect R.M., who described the incident as "[t]raumatizing" for his grandson; and (3) the prior case was prosecuted by the same district attorney's office that was trying Robinson's case.  From all this, the People perceive "ample evidence that R.M.'s negative experience with the criminal legal system and lack of transparency regarding his criminal history bore on his ability to be fair and impartial."  We are not persuaded.

Taking the People's last point first, R.M.'s purported "lack of transparency" regarding his criminal history—which the prosecutor identified as a secondary and independent basis for her challenge—did not serve to rebut the presumptive invalidity of the prosecutor's challenge under section 231.7(e)(1); nor did that circumstance serve to eliminate racial bias "as a factor in the use of the peremptory challenge."  (§ 231.7, subd. (d)(1).) True, the lack-of-transparency rationale was not itself presumptively invalid under section 231.7.  But as one court explained in an analogous context, "an objection to a peremptory challenge must be sustained whenever any reason identified for the challenge becomes conclusively invalid under section 231.7, subdivision (g), regardless of whether the party exercising the peremptory challenge also identifies facially neutral reasons that do not fall within the scope of subdivision (g)."  (*People v. Caparrotta* (2024) 103 Cal.App.5th 874, 896, (*Caparrotta*).)  In this regard, it logically follows that a presumptively invalid challenge under section 231.7 becomes conclusively invalid when a party offers no argument or reasons to justify the challenge.  Thus, when it

12

has been determined "that a conclusively invalid reason played a role in the peremptory challenge, any objective observer would necessarily conclude the invalid reason was 'a *factor* in the use of the peremptory challenge' " (*Caparrotta*, at pp. 896–897), thereby requiring the court to sustain the objection to the challenge (§ 231.7, subd. (d)(1)).

We acknowledge that the parties and the trial court did not have the benefit of the *Caparrotta* decision at the time of trial in this case, and also that *Caparrotta* specifically dealt with the presumptive invalidity of demeanor-based reasons under subdivision (g). We nonetheless agree with *Caparrotta*'s reasoning and apply it to the presumptively invalid reasons under section 231.7, subdivision (e). Accordingly, the fact that the prosecutor offered a secondary and facially neutral reason for peremptorily challenging R.M. did not suffice to overcome the presumed invalidity of her primary reason.

Notwithstanding the prosecutor's failure to explain her challenge, we assess whether the record contains clear and convincing evidence that an objectively reasonable person would view the prosecutor's rationale as unrelated to R.M.'s cognizable group membership and bearing on his ability to be fair and impartial. (§ 231.7, subd. (e).) "For purposes of subdivision (e), the term 'clear and convincing' refers to the degree of certainty the factfinder must have in determining whether the reasons given for the exercise of a peremptory challenge are unrelated to the prospective juror's cognizable group membership, bearing in mind conscious and unconscious bias. To determine that a presumption of invalidity has been overcome, the factfinder shall determine that it is highly probable that the reasons given for the exercise of a peremptory challenge are unrelated to conscious or unconscious

13

bias and are instead specific to the juror and bear on that juror's ability to be fair and impartial in the case." (§ 231.7, subd. (f).)

Here, we accept that the record indicates the prosecutor's primary reason for exercising the challenge was specific to R.M. But importantly, we cannot say it is highly probable that the prosecutor's rationale was unrelated to bias and that it bore only on R.M.'s ability to be a fair and impartial juror in this case. As R.M. testified, he had previously served as a juror in a criminal case in San Mateo County. And unlike the properly excused prospective jurors in other cases, R.M. did not make equivocal statements about his ability to be impartial due to his family's negative past experience with the justice system. (See, e.g., *People v. Gonzalez* (2024) 104 Cal.App.5th 1, 17–18 (*Gonzalez*) [prospective juror gave "multiple uncertain and noncommittal responses regarding impartiality" and was visibly emotional about past experiences with law enforcement]; *Jimenez, supra*, 99 Cal.App.5th at p. 544 [prospective juror repeatedly acknowledged having difficulty setting aside her belief that law was not color blind].) Rather, R.M. squarely stated he could be impartial and cited his work in forensics as proof of his ability to make fact-based decisions. Although the negative experience involving R.M.'s family was still fairly recent at the time of trial, we cannot overlook the substance of R.M.'s testimony that he was upset because the prosecutor in that case was too lenient on the man who had threatened his son and grandson. It does not appear to follow, then, that R.M. might be biased against the prosecution and in favor of Robinson in this case. If anything, R.M.'s recounting of his experience suggested he would be fully supportive of a robust prosecution.

*Gonzalez, supra*, 104 Cal.App.5th 1, does not compel a contrary result. Although the prospective juror in that case expressed displeasure at how law

enforcement handled a case in which his cousin was a crime victim, the circumstances there were more likely to negatively affect the prospective juror's views of the testifying police officers. Notably, the prospective juror in *Gonzalez* recounted that police officers had left his wounded cousin on the ground for two hours (before he ultimately died), and then "tried 'to blame us for doing it' " while treating the family like they were gang members. (*Gonzalez*, at p. 10.) The prospective juror also cited a childhood experience in which police detained him and his friends and beat their hands with a flashlight, an experience that left him bitter about police. (*Ibid.*) Here, in contrast, R.M. felt the man who had threatened his family should have been prosecuted more vigorously, and nothing in R.M.'s testimony suggested he had misgivings that might cause him to distrust or question the work of the police or the prosecution in this case.

In sum, the prosecutor's exercise of a peremptory challenge against R.M. was based explicitly and primarily on his past negative experience with the criminal justice system, a presumptively invalid reason under section 231.7(e)(1), and the record lacked clear and convincing evidence that the challenge was not due to conscious or unconscious bias but instead bore on his ability to be a fair and impartial juror. That the prosecutor offered a secondary and facially neutral reason for peremptorily challenging R.M. is beside the point because she did not overcome the statutory presumption of invalidity of her primary reason. (*Caparrotta, supra*, 103 Cal.App.5th at pp. 896–897.) Thus, Robinson's objection to the peremptory challenge was erroneously overruled, and prejudicially so. (§ 231.7, subd. (j).) We reverse the judgment and remand for a new trial.[2]

---

[2]     In this case, as in *Espiritu*, the People do "not challenge the constitutionality of any portion of section 231.7, including subdivision (j)

15

In light of our conclusion, there is no need to resolve Robinson's remaining arguments regarding the trial court's totality-of-the-circumstances finding under section 231.7, subdivision (d)(1); the denial of Robinson's *Batson/Wheeler* motion; the sufficiency of the evidence to support the trafficking conviction; and the prosecutor's alleged misconduct during closing arguments. However, we shall address other issues, raised and fully briefed on appeal, that are likely to recur on retrial. (*People v. Neely* (1993) 6 Cal.4th 877, 896.)

**B. Penal Code section 236.1, subdivision (h)(3)**

Robinson does not contest his pimping conviction, but in challenging the sufficiency of the evidence to support his trafficking conviction, he raises a legal issue as to the meaning of the word "includes" in Penal Code section 236.1, subdivision (h)(3) ("section 236.1(h)(3)").

Penal Code section 236.1, subdivision (b), provides in relevant part: "A person who deprives or violates the personal liberty of another with the

---

which mandates automatic reversal and remand for a new trial when an appellate court determines an objection to a peremptory challenge was erroneously denied." (*Espiritu, supra*, 119 Cal.App.5th at p. 1141, fn. 4.)

We note, however, that certain individual justices believe the methodology of section 231.7, subdivision (j), is unconstitutional because it "usurps" our state constitutional " 'miscarriage of justice' " standard which requires an examination of the entire record before reversal. (*People v. SanMiguel* (2024) 105 Cal.App.5th 880, 891–893 (conc. opn. of Yegan, J.) rev. granted Dec. 18, 2024, S287786 [to address whether trial court properly overruled defendant's section 231.7 objection to a peremptory challenge]; *People v. Garcia* (2025) 114 Cal.App.5th 1154, 1167 (conc. opn. of Yegan, J.) rev. granted Dec. 30, 2025, S293973 [granted and briefing deferred pending decision in *SanMiguel*]; see also *Espiritu, supra*, 119 Cal.App.5th at p. 1143 (dis. opn. of Moore, J.); cf. *People v. Bankston* (June 1, 2026, S044739) ___ Cal.5th ___, [slip opn. at pp. 149–151] [mentioning but not deciding "the serious constitutional questions that would arise were we to . . . adopt the automatic reversal rule" for violations of the Racial Justice Act].)

intent to effect or maintain a violation of Section . . . 266h [pimping] . . . is guilty of human trafficking." In turn, Penal Code section 236.1(h)(3) provides that " '[d]eprivation or violation of the personal liberty of another' *includes* substantial and sustained restriction of another's liberty accomplished through force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person, under circumstances where the person receiving or apprehending the threat reasonably believes that it is likely that the person making the threat would carry it out." (Italics added.)

Robinson maintains that the word "includes," as used in section 236.1(h)(3), constitutes a term of limitation because it is followed by specific and detailed language—i.e., "substantial and sustained restriction of another's liberty accomplished through force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury"— that serves to narrow the scope of conduct that satisfies the deprivation element. The People maintain that "includes" is a term of enlargement, making the language that follows it a nonexhaustive list of conduct that may accomplish the deprivation of liberty. We agree with the People.

A dispute over statutory interpretation is a question of law subject to our independent review, which calls for our focus on the language of the statute. (*People v. Salstrom* (2025) 117 Cal.App.5th 596, 599–600.)

In support of his interpretation, Robinson relies on *Pitney-Bowes, Inc. v. State of California* (1980) 108 Cal.App.3d 307 ( *Pitney-Bowes*), which held the statutory words "shall include," followed by "specific and detailed" language regarding certain devices to be regulated by the statute, constituted a term of limitation. (*Id.* at pp. 316–317.) But the instant case is distinguishable in that the statutory language in question here is the word

17

"includes," not "shall include." Had the trafficking statute stated a deprivation of liberty "shall include substantial and sustained restriction of another's liberty," we might agree the term is limiting. But under general principles of statutory construction, the word "includes"—by itself—"is generally used as a word of enlargement and not of limitation. [Citation.] Thus, where the word 'include' is used to refer to specified items, it may be expanded to cover other items." (*Rea v. Blue Shield of California* (2014) 226 Cal.App.4th 1209, 1227 (*Rea*).)[3]

Our interpretation of "includes" in Penal Code section 236.1 as a term of enlargement is supported by the reasoning of *People v. Oliver* (2020) 54 Cal.App.5th 1084 (*Oliver*), which analyzed the term in holding that a victim's lack of consent was not a requisite element of the offense of human trafficking. Emphasizing that "includes" is ordinarily a term of enlargement, *Oliver* held that Penal Code section 236.1(h)(3) set forth a "nonexhaustive definition of deprivation or violation of personal liberty [that] leaves open the possibility that a victim may agree to have his or her freedom of movement limited by a pimp, for example, to help facilitate and share in the profits of a prostitution ring." (*Oliver*, at p. 1097, italics omitted.) Following *Oliver*'s lead, we conclude a "substantial and sustained restriction of another's liberty accomplished through force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury" is a sufficient but not necessary form of deprivation of liberty for purposes of the offense of human trafficking.

---

[3] Other statutes related to the offense of human trafficking use the enlarging term "including, but not limited to." (See, e.g., Pen. Code, §§ 236.4, 236.14.) However, "a simpler enlargement phrase ('includes')" does not become "a limiting phrase merely because in a related statute another enlarging phrase ('including but not limited to') is used. More likely, the Legislature chose to use two different phrases to indicate enlargement." (*Rea, supra*, 226 Cal.App.4th at p. 1228.)

**C. Instructional Error**

The trial court gave a unanimity instruction to the jury as follows: "The defendant is charged with human trafficking in Count 1 with an offense date on or between April 13th and July 5th of 2023. [¶] The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed."

Robinson argues the unanimity instruction lessened the prosecution's burden of proof on the trafficking count. As we understand this contention, Robinson maintains that human trafficking under Penal Code section 236.1 is a "continuous course of conduct" offense because the alleged goal (e.g., pimping) is itself a continuous-course-of-conduct offense. Robinson reasons the trial court's instruction—i.e., that the jury could convict him of trafficking so long as it agreed on "one" of the acts alleged to have occurred between April 13 and July 5—lessened the prosecution's burden to prove he had engaged in a continuous course of conduct. We see no merit to this argument.[4]

In criminal cases, the jury must unanimously agree that a defendant is guilty of a specific crime, and when the evidence suggests more than one discrete crime was committed, the prosecution must elect among the criminal acts, or the jury must be instructed that it must unanimously agree on the same criminal act in order to convict. (*People v. Wolfe* (2003) 114 Cal.App.4th 177, 183–184.) There is a recognized exception to this rule "where the acts

---

[4]    Although Robinson did not object on this ground at trial, we may reach his instructional error claim for the first time on appeal because the claimed error, if sustained, would affect his substantial rights. (Pen. Code, § 1259; *People v. Prieto* (2003) 30 Cal.4th 226, 247.)

proved constitute a continuous course of conduct. [Citation.] ' "This exception arises in two contexts. The first is when the acts are so closely connected that they form part of one and the same transaction, and thus one offense. [Citation.] The second is when . . . the statute contemplates a continuous course of conduct of a series of acts over a period of time." ' " (*People v. Napoles* (2002) 104 Cal.App.4th 108, 115 (*Napoles*).) We review de novo the question whether a trial court erred in instructing the jury or failing to instruct the jury. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

Contrary to Robinson's suggestion, human trafficking is not, by statutory definition, a continuous-course-of-conduct offense. On its face, Penal Code section 236.1 does not require a series of acts over time. Rather, it requires a deprivation or violation of a victim's personal liberty with the requisite intent to commit a specified crime such as pimping. That the deprivation element is defined to include "substantial and sustained restriction of another's liberty" (§ 236.1(h)(3)) does not necessarily mean it requires more than one act. An offender may, in what amounts to a single incident, substantially and for a sustained period of time deprive someone of their personal liberty. And the mere circumstance that pimping has been held to be a continuous-course-of-conduct offense for purposes of the rule against multiple convictions for one criminal act (see *People v. Lewis* (1978) 77 Cal.App.3d 455, 461–462) does not mean section 236.1(h)(3) is also a continuous-course-of-conduct offense. To establish a violation of section 236(h)(3), the prosecution need not prove that pimping actually occurred, only that it was the offender's intent to commit pimping when depriving the victim of their personal liberty.

Robinson nevertheless maintains that because the information specifically charged him with multiple acts of trafficking over a span of

several months, the trafficking count was a continuous-course-of-conduct offense, and the jury therefore had to unanimously agree that a continuous course of conduct was proved. In support, Robinson relies on a passage in *Napoles* where the court explained that because an information accused the defendant of child abuse between two different dates, this "alert[ed] the jury that the charge consists of a continuous course of conduct, to be proved by evidence of more than one individual act." (*Napoles, supra,* 104 Cal.App.4th at pp. 116–117.) But the takeaway from that passage was that because the information alleged a continuous-course-of-conduct offense, no unanimity instruction was required. (*Id.* at p. 117.) *Napoles* is not authority for Robinson's specific contention that where, as here, a unanimity instruction is given in connection with an offense alleged to have occurred multiple times over a specified time period, this lowers the prosecution's burden of proof.

Indeed, what was problematic (but ultimately harmless) in *Napoles* was that the trial court gave a "non-unanimity" instruction that " 'unpackaged' the course of conduct by informing the jurors that the defendants could be convicted for a *single* act (or omission)," but then also instructed that "unanimous agreement on the specific act or omission found unlawful was unnecessary." (*Napoles, supra,* 104 Cal.App.4th at p. 118.) Here, no similar "non-unanimity" instruction was given, and instead the court gave an instruction that expressly required the jury to unanimously "agree on which act he committed." Presuming, as we must, that the jurors understood and followed this instruction (*People v. Gray* (2005) 37 Cal.4th 168, 231), they must have reached unanimity on at least one act by Robinson of depriving C.V. of her personal liberty with the intent to pimp her during the time period alleged in the information. As such, the prosecution's burden

21

to obtain the jury's unanimous agreement on Robinson's guilt for human trafficking was not lessened by the unanimity instruction.

## DISPOSITION

The judgment is reversed, and the case is remanded for a new trial.


_____

Fujisaki, J.


WE CONCUR:


_____

Tucher, P. J.


_____

Petrou, J.


*People v. Robinson* (A170472)


22